No. 46,123

TONIE TORKELSON, SR., *Appellant,* v. THE BANK OF HORTON, *Appellee.*

(491 P. 2d 954)

Opinion filed December 11, 1971.

*Howard A. Spies,* of Schroeder, Heeney, Groff and Spies of Topeka, argued the cause, and *John F. Gernon,* of Hiawatha, was with him on the brief for the appellant.

*Harry E. Miller,* of Finley, Miller and Cashman, of Hiawatha, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This was an action against a bank for damages for wrongfully dishonoring a check drawn upon it to pay a life insurance premium. Plaintiff was the beneficiary in the policy which lapsed shortly before the death of the insured for nonpayment of the premium. Summary judgment was entered for the bank and plaintiff has appealed.

Plaintiff Tonie Torkelson, Sr., filed his petition against the defendant Bank of Horton on September 2, 1964, alleging the following: That during his lifetime Tonie Torkelson, Jr., had issued to him by the Knight's Life Insurance Company a policy of life insurance insuring his life in the amount of $20,000, with double indemnity in case of accidental death; that plaintiff was named as beneficiary in the policy if living at the time of Tony Junior's death; a premium of $143.20 became due on the policy and on September 17, 1962, Tony Junior remitted this premium to the insurance company by means of a check for that amount drawn by him upon an account maintained by him in the defendant bank; the insurance company deposited the check but on September 27, 1962, the de-

fendant bank returned it to the insurance company because of insufficient funds in Tony Junior's account; the insurance company resubmitted the check to the defendant bank and on October 9, 1962, the bank again declined to honor the check and returned it marked "insufficient funds"; that on either one or both occasions upon which the check was received by the bank there were sufficient funds in Tony Junior's account with which to pay the check but it was not paid due to the negligence and wilfulness of the bank; by reason of the fact the check was not paid the insurance policy on the life of Tony Junior lapsed; he was accidentally killed on October 23, 1962, and if Tony Junior's check had been honored by the bank when received the insurance would have been in effect at the time of his death and plaintiff would have received the sum of $40,000 from the insurance company. Plaintiff prayed for judgment against the bank for that amount.

The bank filed its answer in which it admitted the issuance of the policy upon the life of Tony Junior and his accidental death as alleged by plaintiff. It admitted that the $143.20 check drawn by him and made payable to the insurance company was presented to it for payment on September 24, 1962. The bank alleged it returned the check because Tony Junior did not have sufficient funds in his account to pay it; that Tony Junior was informed the check had been returned for insufficient funds. The bank further alleged that on October 3, 1962, Tony Junior came into the bank in company with John, Florence and William R. McEnulty and stated to the bank president and an employee that he was selling a bulldozer to the McEnultys for an agreed price of $3,600 on condition that a certain repair bill for work to be done on the bulldozer by a Wayne Haupp be paid as soon as the work was completed; it was agreed between Tony Junior and the McEnultys that the bank retain out of the purchase price the sum of $565.00 in the former's bank account with which to pay the repair bill, and for no other purpose, and the bank was not to permit the account to become less than $565.00 so that the repair bill could be paid; the bank so tabbed its records in accord with this agreement; on October 9, 1962, Tony Junior's check to the insurance company was again presented for payment, was again returned marked "insufficient funds" because payment of the check would have resulted in the checking account containing less than $565.00 and Tony Junior was again informed the check had been returned for insufficient funds. The bank's answer further

pleaded plaintiff was not the real party in interest to assert the claim.

Plaintiff filed a reply, the nature of which we need not set out except to indicate it took issue with the new matter pleaded in the bank's answer.

Following the filing of this last pleading October 16, 1964, the case went into a state of repose, languishing for some unknown reason until a pretrial conference was held March 5, 1970, new counsel for plaintiff having entered the case meanwhile. In the pretrial order the factual and legal issues were defined generally as those raised by the pleadings. The bank filed its motion for summary judgment upon the ground plaintiff was not the real party in interest. On March 13, 1970, the court sustained this motion and plaintiff has appealed.

The rationale of the trial judge's decision was stated thus:

"I conclude that the plaintiff is not the real party in interest and has no right to bring this action. He was not a creditor of the defendant bank and had no interest in the creditor and debtor relationship of the decedent and the defendant. Any cause of action the decedent had in the debtor-creditor relationship against the defendant would have to be instituted by the decedent in his lifetime, or by his administrator or executor, after his death."

We must agree with the trial court's conclusion that plaintiff had no right to bring the action, which is simply another way of saying his petition did not state a claim upon which relief could be granted to him.

Apparently, in the trial court as well as here, the parties have considered the crucial point to be whether plaintiff was the real party in interest within the meaning of our procedural code. It may well be doubted if the correctness of the trial court's ruling turns, or was so intended by that court to turn, upon the narrow procedural aspect of the real party in interest rule as employed in its usual sense, although the situation presented is closely akin thereto.

Our statute on the subject states:

"*Real party in interest.* Every action shall be prosecuted in the name of the real party in interest. . . ." (K. S. A. 60-217 [*a*].)

The statute then specifically authorizes certain classes of persons to prosecute actions.

The phrase "real party in interest" as used in our code as well as in the equity procedure from whence it sprang generally came into being in determining which of two or more persons might properly bring an action where holders of assignment or subrogation rights,

either whole or partial, holders of different interests in the same property, holders of equitable interests, representatives, trustees and the like were concerned (see James, Civil Procedure § 9.2, *et seq.*). The requirement that an action be brought by the real party in interest has as one of its principal purposes the protection of the defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action so that if a judgment be obtained it is a full, final and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party (*First National Bank of Topeka v. United Telephone Ass'n*, 187 Kan. 29, 353 P. 2d 963). One standard frequently applied is that the real party in interest is the one entitled to the fruits of the action, and the phrase "real party in interest" is grammatically quite capable of that meaning (James, Civil Procedure, § 9.2). In 3A Moore's Federal Practice (2d ed. 1970) § 17.02, the author has this to say:

"The meaning and object of the real party in interest provision would be more accurately expressed if it read: *An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced.*" (p. 53.)

A party's substantive right to recover in a particular action is neither enlarged nor restricted by the provisions of the real party in interest rule and we look then to substantive law to see what if any claim for relief plaintiff here has stated in his petition. First of all plaintiff clearly bases his claim upon the alleged wrongful act of the bank in failing to honor Tony Junior's check for the insurance premium at a time when sufficient funds were in the account with which to pay the check. But, accepting as true plaintiff's version of events, was plaintiff legally wronged by this act?

A check of itself is not an assignment of the funds in the hands of the drawee bank (*Anderson v. Elem*, 111 Kan. 713, 208 Pac. 573, 23 A. L. R. 1202). Generally it is the duty of a bank to honor checks drawn on it by a depositor if the drawer has on deposit sufficient funds when the check is presented which are not subject to some lien or claim, and for an improper refusal to honor the check the depositor has an action against the bank for any damage which may have been sustained by reason of such refusal. However, the same liability does not inure to the benefit of a holder or payee of a check and the bank is generally not liable to the holder unless and until it accepts or certifies the check. (10 Am. Jur. 2d, Banks,

§§ 567, 568). In connection with the latter rule it must be kept in mind that if, by virtue of special circumstances in addition to the mere issuance of the check, the check is deemed to be an assignment *pro tanto* of the funds called for, the holder may sue the drawee bank for its payment if there are sufficient funds to meet the check, even though it was not accepted or certified. This was the situation in *Ballard v. Bank,* 91 Kan. 91, 136 Pac. 935, which case is principally relied upon by plaintiff for reversal here.

In *Ballard* the factual situation and the court's holding are summarized in the syllabus thus:

> "Where a national bank through its president agrees with a customer, who is indebted to it, that if he purchases live stock and in payment therefor gives checks on the bank, the checks will be paid provided that by the time they are presented the drawer shall have resold the stock and deposited the proceeds with the bank, and in pursuance of such agreement the customer issues checks in payment for stock which he at once resells, delivering the proceeds to the bank, the holder of such checks can maintain an action for their amount against the bank, notwithstanding he did not know of the agreement, and notwithstanding nothing was said at the time the deposit was made about the agreement or the application of the funds."

In the opinion the court had this to say:

> "The defendant further maintains that whatever may be the relations between the bank and Stewart (the drawer), the plaintiffs have no cause of action against the bank, because there is no privity between them. Of course, by the usual rule, which obtains in this state, the holder of a check can not ordinarily maintain action thereon against the bank, notwithstanding it may have had funds to meet it when it was presented. [Citations] Special circumstances, however may give to the issuance of a check the character of a *pro tanto* assignment thereby vesting in the holder a right of action upon it against the bank on which it is drawn. [Citation] Here the actions are not brought upon the checks alone but upon the entire transaction, of which the giving of the checks forms a part." (pp. 95-96.)

The principle applicable in *Ballard* does not help plaintiff, who was neither the payee nor holder of the check presented for payment nor were there special facts or circumstances attending the drawing or delivery of the check which could give rise to making its issuance something in the nature of a *pro tanto* assignment of the funds called for by the check.

It must be borne in mind the insurance policy lapsed during the lifetime of Tony Junior. Any breach of duty by the bank by reason of its failure to honor the check, tortious or otherwise, wronged him and no reason is apparent why he could not have maintained an action against the bank for any consequential damage sustained by

him because of the bank's wrongful dishonor of the check. Tony Junior did not commence any action against the bank and we need not determine whether any such action survived his death as that question is immaterial. What is important is that when the bank returned the check it breached no duty to plaintiff arising either from contract or from the common law. Plaintiff was not injured, he suffered no damage and he could not then have maintained an action against the bank. Plaintiff argues the insurance policy would never have become an asset of the estate and was not liable for debts of the estate and hence he and not the representative of the estate is the proper person to go after the bank for its wrong. The fallacy in the argument lies in its assumption of the existence of a valid policy at the time of the insured's death, which was not the case. The well-established rules respecting bank checks fairly well dispose of recovery on the basis of a contract for the benefit of a third party, and we simply are unable to see any other theory upon which Tony Junior's death matured in plaintiff some greater claim than plaintiff had at the time of the bank's alledged wrongful act.

The trial court correctly entered summary judgment for the defendant bank and that judgment is affirmed.

APPROVED BY THE COURT.

O'CONNOR and PRAGER, JJ., not participating.