No. 64,666

DONALD RYDER, *Plaintiff*, v. FARMLAND MUTUAL INSURANCE CO.,
*et al., Defendants.*

*In re*: Motion to Settle and Approve Attorney Fees

(807 P.2d 109)

Opinion filed March 1, 1991.

*John Terry Moore*, of Hinkle, Eberhart & Elkouri, of Wichita, argued the cause and was on the brief for appellants Steven C. Geeting and Fisher, Weathers & Geeting.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and was on the brief for appellee Wallace, Saunders, Austin, Brown and Enochs, Chartered.

*David P. Troup*, of Weary, Davis, Henry, Struebing & Troup, of Junction City, was on the *amicus curiae* brief for Kansas Trial Lawyers Association.

The opinion of the court was delivered by

SIX, J.: This case involves a fee dispute between two law firms arising from the referral of a personal injury case. The controversy between the law firms concerns the division of a contingent fee, one-third of the recovery, resulting from a $2,500,000 settlement on behalf of the plaintiff, Donald Ryder. Ryder's Kansas attorneys, Wallace, Saunders, Austin, Brown and Enochs, Chartered (Wallace, Saunders), who contend no referral fee is owing, filed a post-settlement motion to approve attorney fees and to resolve the dispute.

California lawyer Steven C. Geeting and his law firm of Fisher, Weathers & Geeting (all referred to as FW&G), who contend a referral fee is owing, appeal the rulings of the trial court. The trial court held that FW&G is not entitled to a referral fee to be paid by Wallace, Saunders from the one-third contingent fee.

We are presented numerous issues for review.

One of the issues is the trial court's denial of FW&G'S motion to dismiss the Wallace, Saunders fee motion. Was the trial court correct?

FW&G filed its motion to dismiss, asserting that the controversy over the referral fee was limited to the two law firms. FW&G claims the parties to the instant personal injury lawsuit, Donald Ryder, plaintiff, ·and Farmland Mutual Insurance Co., Coop Service, Inc., and Terry R. Nebhut, defendants, are not the real parties in interest in the dispute over the division of the one-third contingent fee. FW&G also contends the action should have been dismissed for lack of personal jurisdiction over FW&G.

After denial of FW&G's motion to dismiss, the trial court sustained a Wallace, Saunders motion for summary judgment which denied FW&G any portion of the one-third fee. FW&G also appeals the summary judgment ruling.

The issue of attorney referral fees under MRPC 1.5 (1990 Kan. Ct. R. Annot. 222) is a factor in this appeal. The threshold event in the Wallace, Saunders-FW&G fee division dispute begins on March 1, 1988, the effective date of our referral fee rule (MRPC 1.5). Wallace, Saunders asserts that MRPC 1.5(e) (1990 Kan. Ct. R. Annot. 222-23), authorizes Ryder's motion to settle and approve attorney fees.

We agree with FW&G's real party in interest argument. The motion to dismiss should have been sustained. Because we have resolved the appeal by our ruling on the real party in interest issue, we conclude that it is not necessary to address FW&G's summary judgment-personal jurisdiction contention.

Our jurisdiction arises under K.S.A. 20-3017 as the case comes to us on a transfer from the Court of Appeals.

The trial court is reversed. The FW&G motion to dismiss should have been sustained. The case is reversed and remanded with directions to dismiss.

### Facts

On February 26, 1988, Donald Ryder was seriously injured in a Western Kansas truck accident when the tractor/trailer he was driving for his employer collided' with a pickup truck owned by Coop Services, Inc., (Coop) and driven by Terry R. Nebhut. Farmland Mutual Insurance Co. (Farmland) is the insurance carrier for Coop. Ryder was unconscious for three to four weeks following the accident. While Ryder was unconscious, his brother and sister-in-law, who lived in California, contacted attorney Mac Fisher of FW&G by phone regarding Ryder's accident. Fisher was, or had been, representing Ryder's sister-in-law at the time of Ryder's accident.

Wallace, Saunders asserts that this phone call was to obtain the name of a Kansas attorney. FW&G controverts this assertion and claims that future discovery will show that Ryder's brother and sister-in-law initially contacted Fisher to represent Ryder directly.

FW&G began looking for a Kansas lawyer. Geeting, a former claims manager for Allstate Insurance and Fisher's partner in FW&G, phoned the Kansas City Allstate claims office to inquire about recommended attorneys. He was given the name of Paul Hasty, Jr., of the Wallace, Saunders firm. On March 1, 1988, Geeting telephoned Hasty concerning Ryder's accident. Geeting inquired about Wallace, Saunders' experience with personal injury cases. During this initial call, Geeting and Hasty discussed a referral fee; however, they differ as to what was agreed upon. Geeting admits that Hasty told him that referral fees were not allowed in Kansas, but states Hasty agreed FW&G would be: (1) kept informed of everything that occurred and provided with copies of all documents; (2) asked to assist if necessary; and (3) involved in the case, which would allow a "fair and equitable" division of fees at the end of the case. Hasty stated that at that time he thought Ryder was a California resident and assumed that the case would require some work in California. According to Hasty, they agreed to split the fee based on the work done by each firm.

Shortly after the initial conversation between Geeting and Hasty, Geeting put Hasty in contact with the Ryder family.

Hasty stated in his deposition that he believed the Wallace, Saunders attorney-client relationship with Ryder was established on March 21, 1988, the date Ryder signed the contingent fee agreement. However, the record indicates Hasty began representing Ryder before March 21, 1988.

Examples of the Wallace, Saunders representation prior to March 21, 1988, were:

(1) March 7, 1988, letter, Hasty to Allen Ryder (brother of the plaintiff): "As you know, this office has been retained to represent your brother, Donald . . . . We have taken the preliminary steps to have you appointed as your brother's guardian and conservator. . . .

"I have been in contact with Hartford, the worker's compensation carrier. . . .

". . . I have been in contact with the trooper who investigated the accident. . . .

". . . As soon as I receive a copy of the highway patrol

report, we will be in contact with the co-op [*sic*] and the insurance carrier.

"I have photographs that were taken by Mr. Holloway shortly after the accident occurred. . . .

. . . .

"As soon as I have the trooper's report, . . . we will be in contact with the witnesses."

(2) March 10, 1988, letter, Hasty to Kansas Highway Patrol Headquarters: "This office represents Donald Ryder . . . .

". . . Please provide a copy of the photographs to me."

(3) March 10, 1988, letter, Hasty to Farmland Mutual Insurance Company: "This office represents Donald Ryder . . . .

. . . .

"I would like to have access to the vehicle that Mr. Nebhut was driving at the time this accident occurred. Please advise what arrangements need to be made so that an inspection can occur."

(4) March 10, 1988, letter, Hasty to Richard Chance, Vice President of Claims, Tri-States Insurance Company (Ryder's employer's carrier): "This office represents Donald Ryder . . . .

". . . Ryder was operating a vehicle insured under a policy issued by your company . . . ."

(5) March 10, 1988, letter, Hasty to Gary Thompson (accident reconstruction expert): "This office represents Donald Ryder . . . .

". . . Please advise if you will work with us on this case."

(6) March 18, 1988, letter, Attorney Diepenbrock to Hasty: "This office represents Farmland Mutual Insurance Company and its insured, Coop Service Inc., and I have your March 10, 1988, letter addressed to Farmland . . . ."

Hasty began representing Ryder without a contract. After Ryder regained consciousness, Hasty and Ryder, on March 21, 1988, entered into a written contingent fee contract (33.3% of gross amount received, after first deducting expenses, if suit is filed).

Hasty corresponded with Geeting after March 21, 1988.

On March 23, 1988, Hasty sent copies of all the correspondence that "has been generated so far" to Geeting. Hasty stated:

"This letter also confirms that you have agreed to assist us in the matter. [Hasty here explains his recent discovery that Ryder does in fact live in Kansas, not California.] Obviously, at this point, it's difficult to anticipate what work is going to be done on the file, but I will look forward to requesting your assistance if a problem comes up with any of the family members or anything of that nature or something is needed in your area of the country."

On April 1, 1988, Hasty wrote to Geeting concerning possible benefits to Ryder arising from Ryder's auto coverage and workers compensation coverage.

"I need to make application for those benefits on Mr. Ryder's behalf, but I don't know the name of the company, the agent, or the policy number . . . .

"Please advise if there's any way for you to obtain this information for me.

"Farmland has requested Mr. Ryder's tax returns for the last three years. Any assistance you can provide in getting that information to me would be greatly appreciated."

On April 11, 1988, Wallace, Saunders filed the instant personal injury action on Ryder's behalf in Sedgwick County District Court against the defendants, Farmland Mutual Insurance Co., Coop Service, Inc., and Terry R. Nebhut. A settlement of $2,500,000 was reached in late February 1989. Wallace, Saunders sent copies of pleadings and correspondence to Geeting while the case was pending. Hasty discussed various stages of the litigation, including settlement offers with Geeting.

On February 28, 1989, shortly after the *Ryder* settlement, and one year from March 1, 1988, (the date of the initial Geeting to Hasty phone call) Hasty notified Geeting by letter that *Palmer v. Breyfogle,* 217 Kan. 128, 535 P.2d 955 (1975), prohibited the sharing of attorney fees except on the basis of either legal services performed or the discharging of responsibility in the case. Hasty offered Geeting $10,000, as a fair fee, based on the services performed standard. Hasty had referred to *Palmer* (he did not recall the case by name) during their initial March 1, 1988, phone conversation.

During his deposition (taken May 26, 1989, in *Wallace Saunders v. FW&G,* No. 89-1201-K [D. Kan.]) Hasty was asked about the initial March 1, 1988, conversation with Geeting. According to Hasty, Geeting asked for 25% of the attorney fees. Hasty told

him such an arrangement was not agreeable and "I told him that [the referral fee] was not permitted in Kansas at all." The basis for Hasty's comment that referral fees were not permitted in Kansas "was a case directly in point and it was unethical." Hasty did not have the name or the citation during the March 1, 1988, conversation, but he said he has been referring to the *Palmer* case.

A dispute arose between Wallace, Saunders and FW&G as to what the agreement was at the time of the initial referral, March 1, 1988.

On March 6, 1989, Geeting "faxed" a reply to Hasty's February 28, 1989, letter. This reply rejected the $10,000 offer and demanded $124,875, 15% of the contingency fee. Wallace, Saunders later offered Geeting $20,000, which was also rejected.

On March 7, 1989, Wallace, Saunders filed, in the name of the plaintiff Ryder, a motion to settle and approve attorney fees. On March 8, 1989, Wallace, Saunders filed, and the trial court granted, a motion for an order allowing it to pay $124,875 (15% of the one-third contingent fee) to the clerk of the court.

The same day, Wallace, Saunders also filed a separate declaratory judgment action in the Sedgwick County District Court against Steven C. Geeting and the law firm of Fisher, Weathers & Geeting. Wallace, Saunders, as plaintiff, sought a declaratory judgment holding that defendant, FW&G, was not entitled to any of the one-third contingency fee arising from the *Ryder* settlement. FW&G filed an answer, a counterclaim, and a demand for a jury trial.

The declaratory judgment action was removed to the United States District Court for the District of Kansas (No. 89-1201-K) on April 6, 1989, on motion of FW&G.

On May 24, 1989, FW&G filed a motion for a preliminary injunction in the federal case seeking to enjoin Wallace, Saunders from pursuing its motion to settle and approve attorney fees in the case at bar. The federal motion was denied. Federal proceedings were stayed pending the outcome of the motions before the trial court in the instant action.

Wallace, Saunders disbursed to Ryder his full share of the settlement on or about March 14, 1989.

On March 21, 1989, a stipulation of dismissal with prejudice was filed dismissing Ryder's personal injury action against the three defendants, Farmland Mutual Insurance Co., Coop Service, Inc., and Terry R. Nebhut.

FW&G opposed the Wallace, Saunders motion to settle and approve attorney fees. FW&G admitted that it claimed a referral fee from Wallace, Saunders. FW&G stated that Ryder is aware of the FW&G fee claim and has no objection. FW&G also informed the court of the declaratory judgment action which had been removed to the federal court.

Wallace, Saunders filed a motion for summary judgment on its motion to settle and approve attorney fees. On the same day, FW&G filed a motion to dismiss the Wallace, Saunders' motion to settle and approve attorney fees.

The FW&G motion to dismiss asserted that: (1) the trial court lacked personal and subject matter jurisdiction; and (2) the two disputing law firms were not properly joined as parties; consequently, the Wallace, Saunders' motion on attorney fees does not comply with K.S.A. 1990 Supp. 60-217. K.S.A. 1990 Supp. 60-217 requires that every action shall be prosecuted in the name of the real party in interest.

As an alternative to dismissal, FW&G requested that the dispute between the two law firms be transferred to a separate case proceeding in the Sedgwick County District Court with Wallace, Saunders as plaintiff and FW&G as defendant. With the two contesting law firms designated as plaintiff and defendant, FW&G asserted it could be afforded full discovery and a jury trial. The FW&G motion to dismiss and the alternative request were overruled.

FW&G opposed the Wallace, Saunders' motion for summary judgment. The FW&G response repeated the arguments advanced in its motion to dismiss. In addition, FW&G asserted: (1) summary judgment is procedurally improper on a post-settlement motion; (2) there are numerous issues of material fact in dispute; and (3) Wallace, Saunders failed to show that it should prevail as a matter of law.

In the order granting summary judgment to Wallace, Saunders filed November 29, 1989, the trial court noted that a factual dispute exists between Wallace, Saunders and FW&G as to what

was agreed regarding a referral fee. The threshold question for the trial court was whether FW&G had a client to refer. The trial court reasoned that, if FW&G did not have a client to refer, there could be no contract for a referral fee. The trial court found that an attorney-client relationship can only be created by contract. Based on Geeting's deposition testimony taken in the federal court action, the trial court found FW&G never had a contract with Ryder. The trial court then found, as a matter of law, that neither FW&G nor any member of the firm is entitled to attorney fees generated by the *Ryder* settlement.

Wallace, Saunders filed a motion with the trial court to disburse the $124,875 that it had paid to the clerk of the court. The motion came on for hearing on February 8, 1990. The trial court directed the clerk of the court to disburse the funds to Wallace, Saunders unless a supersedeas bond was posted by FW&G within ten days of the filing of the journal entry. No bond was posted.

## MRPC 1.5(g)—Referral Fees—*Palmer v. Breyfogle*, 217 Kan. 128, 535 P.2d 955 (1975)

MRPC 1.5(g) is inexorably tied to the law firm referral fee controversy. We have not been required to comment on the rule in prior opinions. Under the facts presented by this case, we have the responsibility to do so.

FW&G asserts that MRPC 1.5(g) allows division of a fee with a referring attorney. FW&G also asserts that the referral fee is permitted without regard to services performed or responsibility assumed (overruling *Palmer,* 217 Kan. 128). *Amicus,* Kansas Trial Lawyers Association (KTLA), endorses the FW&G argument. Wallace, Saunders does not contest this issue.

FW&G's interpretation of MRPC 1.5 is substantially correct. *Palmer* technically was not overruled on March 1, 1988, by the adoption of MRPC 1.5; however, *Palmer,* on March 1, 1988, became a "non-player" in the instant referral fee contest. *Palmer* was superseded by MRPC 1.5.

We note that Wallace, Saunders was continuing to advance the vitality of DR 2-107(A) (1990 Kan. Ct. R. Annot. 177), as late as March 7, 1989. In its motion to approve and settle attorney fees filed in the trial court, Wallace, Saunders states: "Division of fees under the laws of the State of Kansas is a matter of professional responsibility. DR 2-107 provides [quoting the disciplinary rule]."

The Wallace, Saunders motion prays for an order approving and distributing attorney fees "under the Code of Professional Responsibility."

DR 2-107(A) of the Code of Professional Responsibility was no longer applicable in this jurisdiction after March 1, 1988, as to any matters arising from that date forward.

We now turn to *Palmer. Palmer* interpreted DR 2-107(A). DR 2-107(A) states:

"A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

"(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

"(2) The division is made in proportion to the services performed and responsibility assumed by each.

"(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client." (1990 Kan. Ct. R. Annot. 177-78).

*Palmer* held that recommending another lawyer or referring a case to another lawyer without further handling cannot be construed as performing legal services or discharging responsibility in the case as required by DR 2-107(A)(2). Therefore, the division of fees under the *Palmer* facts was prohibited.

The Model Rules of Professional Conduct were adopted by the House of Delegates of the American Bar Association on August 2, 1983. ABA Model Rule 1.5(e) states:

"A division of a fee between lawyers who are not in the same firm may be made only if: (1) the division in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; (2) the client is advised of and does not object to the participation of all the lawyers involved; and (3) the total fee is reasonable."

The Kansas version of the MRPC was adopted by this court effective March 1, 1988. We modified Rule 1.5. The Kansas rule regarding division of fees is MRPC 1.5(g), which states: "A division of fee between lawyers who are not in the same firm may be made if the client is advised of and does not object to the participation of all the lawyers involved, and the total fee is reasonable." (1990 Kan. Ct. R. Annot. 222.)

The Kansas Comment to MRPC 1.5 states in part:

"Division of Fee

"A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist, or when a lawyer refers a matter to a lawyer in another jurisdiction. Paragraph (g) permits the lawyers to divide a fee by agreement between the participating lawyers if the client is advised, does not object, and the total fee is reasonable. It does not require disclosure to the client of the share that each lawyer is to receive." (1990 Kan. Ct. R. Annot. 224.)

The Code Comparison following the Kansas MRPC 1.5 states: "Rule 1.5(g) permits division without regard to the services rendered by each lawyer if the client is advised, does not object, and the total fee is reasonable." (1990 Kan. Ct. R. Annot. 224.)

Our adoption of MRPC 1.5(g) as modified eliminates the requirement that the division of fees be made in proportion to the services performed and the responsibility assumed for the representation. The relevant portion of *Palmer* has been superseded by MRPC 1.5(g).

Our publication, Rules Relating to Discipline of Attorneys dated March 1, 1988, was mailed in February 1988 to all attorneys registered to practice law in this state.

The preface states in part:

"The Supreme Court and the Kansas Bar Association in 1984 appointed a special ad hoc committee to study, modify, and supplement the Model Rules of Professional Conduct to conform to the needs and experiences of the legal profession and the citizens of Kansas. After many months of publicizing the Model Rules, hearing testimony, and deliberating, the Kansas Committee submitted its final report, with comments, to the Court in 1985.

"During the last two years the Court has reviewed the work of the Kansas Committee, reevaluated and modified the existing procedural rules dealing with discipline, and has now adopted the Model Rules and disciplinary rules as modified.

. . . .

"For the benefit of the bar, this 1988 printing of the rules is annotated and contains both the ABA Commission's comments and the Kansas Committee's comments to the new Model Rules of Professional Conduct. Subsequent reprints of the rules will not contain the comments. A copy of these rules is being mailed to each active and inactive registered Kansas attorney.

The rules contained herein are current through March 1, 1988, while the annotations are current through January 31, 1988.

. . . .

David Prager
Chief Justice

March 1, 1988"

The March 1988 issue of the Journal of the Kansas Bar Association featured an article entitled: *Major Changes in Code Concerning Fees & Advertising—Professional Conduct Rules Adopted.* 57 J.K.B.A. 9 (March 1988).

The trial court entered summary judgment for Wallace, Saunders on the Wallace, Saunders motion to settle and approve attorney fees. The court observed that the fact FW&G did not have a contract with Ryder was uncontroverted. The trial court found, as a matter of law, that absent a contract with Ryder, FW&G had no client to refer and, consequently, could not have a contract with Wallace, Saunders for a referral fee.

MRPC 1.5(g) lists two requirements for a division of a fee between lawyers: (1) the *client* is advised and does not object; and (2) the total fee is reasonable. The word "client" could refer either to the status of a litigant with regard to the referring attorney or with regard to the attorney to whom the matter is referred. If it refers to the relationship with regard to the referring attorney, the rule mandates an attorney-client relationship with the referring attorney. It is clear that the litigant would be a client of the attorney to whom the matter is referred. We adopt what we believe to be the logical interpretation, that "client" refers to the status of the litigant with the attorney to whom the matter is referred.

Under this construction of the rule, although it would be preferable, MRPC 1.5(g) does not require that the referring attorney have an attorney-client relationship with the person referred. Of course, the attorney accepting the referral may impose such a requirement before agreeing to pay a referral fee. This referral relationship between counsel is a matter of contract between attorneys.

Our primary concern is for the client. The ultimate objective is to assure the finest representation possible for a client.

During oral argument, counsel for FW&G stated that no question has ever been raised as to the quality of professional representation extended to Ryder by Wallace, Saunders. A review of the record affirms that fact and reflects that Ryder received thorough and competent representation.

### Appellate Jurisdiction

Wallace, Saunders asserts that we have no jurisdiction to hear the appeal. FW&G contends that the trial court had no jurisdiction to hear the Wallace, Saunders motion to disburse funds after this appeal had been docketed with the Clerk of the Appellate Courts.

FW&G filed a notice of appeal on December 21, 1989. Because no notice of appeal was filed after the February 8, 1990, hearing, Wallace, Saunders asserts that we lack jurisdiction to hear this appeal. Wallace, Saunders contends that the November 29, 1989, summary judgment order is not a final appealable order because it did not determine all of the issues between the parties. Wallace, Saunders argues that the summary judgment order only determined that FW&G is not entitled to the $124,875 paid to the clerk of the court, leaving the question of what should become of that money unsolved.

Only Wallace, Saunders and FW&G claim entitlement to the attorney fees paid to the clerk of the court. When the court ruled on November 29, 1989, that FW&G was not entitled to any of the money, the trial court determined all of the issues between the parties. If FW&G is not entitled to the money, Wallace, Saunders is because no one else claimed an interest. The order directing the clerk to pay out the $124,875 (15% of the one-third contingent fee) to Wallace, Saunders was ministerial.

We have jurisdiction to hear the appeal.

FW&G contends that the trial court lacked jurisdiction to hear and rule on Wallace, Saunders' motion to disburse the funds paid into court because the appeal had been docketed with the Court of Appeals. Because of our disposition of the trial court's ruling on the FW&G motion to dismiss, no discussion of this jurisdictional issue is necessary.

### Trial Court Jurisdiction—The Two "Non-Party" Law Firms

FW&G advances several arguments supporting its claim that

the trial court lacked jurisdiction in the instant personal injury action to determine the dispute over the referral fee.

FW&G contends that summary judgment is improper because the case had been dismissed with prejudice as to the real parties in the lawsuit. The motion to settle and approve attorney fees was filed by Wallace, Saunders in the name of plaintiff Ryder. FW&G asserts that Ryder was not the real party in interest because he has received his full share of the settlement and did not request Wallace, Saunders to file the motion. FW&G also argues that the trial court should have dismissed the action because neither Wallace, Saunders nor FW&G were joined as parties.

Wallace, Saunders counters these arguments, stating that: (1) Ryder dismissed his claims against the three named personal injury defendants while the motion to settle and approve attorney fees was pending; therefore, the trial court retained jurisdiction to rule on the motion; (2) Ryder is the real party in interest because he has a stake in seeing that this litigation is finally over with regard to him and to make sure that he has no further obligation to pay attorney fees; and (3) the failure to join FW&G as a party became moot when FW&G voluntarily entered its appearance in the case.

The summary judgment motion by Wallace, Saunders and the response of FW&G contain issues related to those involved in the FW&G motion to dismiss.

Our reversal of the trial court's denial of FW&G's motion to dismiss is dispositive of this appeal. We address the "real party in interest" issue.

### Real Party In Interest

K.S.A. 1990 Supp. 60-217(a) provides in part:

"*Real party in interest.* Every action shall be prosecuted in the name of the real party in interest; . . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

In *Torkelson v. Bank of Horton,* 208 Kan. 267, 270, 491 P.2d 954 (1971), we observed that one standard frequently applied identifies the real party in interest as "the one entitled to the fruits of the action, and the phrase 'real party in interest' is grammatically quite capable of that meaning (James, Civil Procedure, § 9.2)." We quoted, with approval, 3A Moore's Federal Practice § 17.02 (2d ed. 1970): "The meaning and object of the real party in interest provision would be more accurately expressed if it read: An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced."

The paramount question for resolution is: Who holds the right sought to be enforced?

MRPC 1.5(e) states: "Upon application *by the client,* all fee contracts shall be subject to review and approval by the appropriate court having jurisdiction of the matter and the court shall have the authority to determine whether the contract is reasonable." (Emphasis added.)

MRPC 1.5(e) was drafted to provide the *client* a mechanism for review of a disputed fee contract. In the present case (1) Wallace, Saunders, not Ryder, disputes the referral fee; and (2) FW&G, not Ryder, disputes Wallace, Saunders' refusal to pay a referral fee. Hasty stated in his deposition that Ryder did not request a motion to approve and settle attorney fees. Ryder stated in his deposition that the 33.3% contingency fee was fair and that he is not opposed to FW&G receiving a referral fee. Ryder has received his full settlement. FW&G is not claiming any portion of Ryder's two-thirds share of the settlement.

Ryder does not have the substantive right to enforce the action. He has no legal interest whatsoever in the outcome of the attorney fee dispute.

The dispute is between FW&G and Wallace, Saunders regarding a division of the one-third contingent fee. The controversy arises from an alleged contract between the two law firms. Ryder is not the real party in interest.

Our characterization of the Wallace, Saunders-FW&G controversy does not necessarily mean that the action should have been

dismissed. K.S.A. 1990 Supp. 60-217(a) prohibits dismissal if the real party in interest ratifies commencement of the action.

Neither Wallace, Saunders nor FW&G were formally joined as parties. The general rule is that a judgment may not be rendered for or against one who is not a party to the action or who did not intervene therein. The general rule recognizes exceptions. *Winsor v. Powell*, 209 Kan. 292, 297, 497 P.2d 292 (1972).

In *Winsor* we relied on *Lessert v. Krebs*, 108 Kan. 752, 196 Pac. 1070 (1921). *Lessert* was an automobile replevin action in which judgment was entered in favor of a guardian who paid the plaintiff chattel mortgage holder, with her own money, after suit was filed but who was never made a party to the action. We stated:

"She [the guardian] could have been made a party, and, on her application, probably would have been substituted for the plaintiff. If it were right and proper that judgment be rendered in her favor had she been a party, the court could and probably did consider her as such. Being entitled to subrogation to the rights of the plaintiff, there was no reversible error in rendering judgment in her favor." 108 Kan. at 754.

In the instant case, the trial court never formally joined either Wallace, Saunders or FW&G. In its motion to dismiss, FW&G requested, as an alternative to dismissal, the transfer of the Wallace, Saunders' claim to a separate case designating the two law firms as plaintiff and defendant. This alternative request is tantamount to a motion to join the law firms. The trial court rejected the separate case designation by overruling the FW&G motion to dismiss.

Wallace, Saunders and FW&G participated in the hearings leading to the trial court's resolution of the Wallace, Saunders attorney fees motion. Although not "parties of record," they were "parties in fact" as to that motion. See *Crane v. Cameron*, 71 Kan. 880, 81 Pac. 480 (1905).

"Parties in fact" who are not joined must be afforded full litigation procedures. A defendant has a right to insist that an adversary action shall be brought by the real party in interest as provided by K.S.A. 1990 Supp. 60-217(a). A defendant who has not been joined is not to be "shut out" from asserting defenses and counterclaims.

*Lessert* and *Crane* are not controlling in the instant case. *Lessert* and *Crane* involved pending cases with plaintiffs and defendants, who were active, while the issues were litigated. The "parties in fact," who were not joined, were afforded all litigation procedures as if they had been joined.

In the case at bar, Ryder's personal injury case had been dismissed as to each of the three named defendants. The Wallace, Saunders-FW&G litigation involved no petition, no answer, and no counterclaim. The case was not put on the regular discovery schedule. FW&G was not afforded full litigation procedures available under K.S.A. Chapter 60. FW&G was "shut out" from asserting defenses and counterclaims. See *Rullman v. Rullman*, 81 Kan. 521, 524, 106 Pac. 52 (1910).

Either the FW&G motion to dismiss should have been sustained (so that the controversy could be resolved in the federal case) or the contract dispute postured in the trial court with the law firms joined and designated as plaintiff and defendant.

What now is a proper disposition? The declaratory judgment action filed by Wallace, Saunders against FW&G the day after Wallace, Saunders filed its attorney fees motion in the instant action establishes the law firms as plaintiff and defendant. The declaratory judgment action, removed to federal court, will provide each law firm with a full and fair opportunity to advance its contentions. Neither party will be "shut out" from defenses and counterclaims. In our view the declaratory judgment action provides the proper forum in which to settle the dispute.

Ryder, the plaintiff in this case, is gone from this case. The three personal injury defendants are gone from this case. A dispute exists over the alleged agreement to divide an attorney fee between the two law firms. The federal declaratory judgment action filed by Wallace, Saunders as plaintiff and FW&G as defendant is "standing at the ready."

We express no opinion on the final resolution of the dispute. We hold that the real parties in interest are the contesting law firms and not the absent parties who caption this lawsuit.

Reversed and remanded with directions to dismiss.

ABBOTT, J., not participating.