NOT DESIGNATED FOR PUBLICATION

No. 114,620

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE FARM FIRE AND CASUALTY COMPANY,
*Appellant,*

v.

LATRICE DENSON,
*Appellee,*

and

CARLTON LEWIS,
*Defendant.*

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed August 19, 2016. Affirmed.

*Stephanie B. Poyer*, of Butler & Associates, P.A., of Topeka, for appellant.

No appearance by appellee.

Before MALONE, C.J., GREEN, J., and STUTZMAN, S.J.

*Per Curiam*: State Farm Fire and Casualty Company (State Farm) sued Latrice Denson (Denson) and Carlton Lewis (Lewis) for judgment in the amount of $62,319.69. At the conclusion of a bench trial, the district court granted the petition for judgment against Lewis but denied the claim against Denson. We affirm.

1

FACTS AND PROCEDURAL BACKGROUND

Denson rented a residential property in Lenexa, Kansas, from the owner, Joe Quint (Quint). Quint insured the property with a policy issued by State Farm. On November 10, 2013, Lewis called Denson while she was at work to tell her he was at her residence and was going to do some grilling. Lewis finished his grilling around 2:15 p.m., and Denson got home after work a little over an hour later. That evening, Denson and Lewis sat on the balcony where the grill was located and played dominoes until around midnight. Early the next morning, around 4 a.m., Denson got up to get ready for work and, upon opening the back door, discovered a fire on the back deck. The Lenexa Fire Department responded to the fire and later investigated for cause and origin. White Star Construction, Inc., was engaged to perform repairs to the premises and was paid $62,319.69 for its work. State Farm made the payment to White Star, under the terms of the policy it had issued to Quint.

On August 27, 2014, State Farm filed suit, in its own name, against Denson and Lewis. Lewis filed an answer on December 18, 2014. Denson apparently filed an answer as well—the district judge referred to it during the trial—but it was not included in the record. Both Denson and Lewis represented themselves throughout the case.

The case was tried to the court on August 12, 2015. State Farm appeared through counsel and with a corporate representative. Denson appeared, acting on her own behalf, but Lewis was not present. During the trial, State Farm presented evidence from five witnesses: Quint, as owner/landlord; John Scott Hoch, the division chief of operations for the Lenexa Fire Department, as records custodian for the department; Jerrett Love, an investigator with Fire Consulting International, Inc.; Bob Welch, an employee of White Star Construction, Inc.; and Mike Slater, as records custodian for and corporate representative of State Farm. Denson testified on her own behalf and presented no other evidence.

2

After the close of evidence and upon declaring the case submitted for decision, the court asked about the basis for State Farm's presence in the case as the plaintiff seeking judgment for damages to Quint's property. State Farm's counsel replied that the claim was based on subrogation, contractually provided in the policy between State Farm and Quint, but "it is also statutory and is also recognized through common law." The court heard closing comments from Denson and then entered judgment against Lewis but denied State Farm a judgment against Denson. In addition to Lewis' failure to appear for trial, the court commented that from the evidence it appeared Lewis was the one who actually had done the barbecuing on the deck. Evidence presented by Hoch and Love on the origin of the fire had concurred that the fire originated from the use of the barbecue grill on the wooden deck. In denying judgment against Denson, the court said: "[T]here has been no showing that there is any obligation by Ms. Denson to State Farm Fire and Casualty Insurance through any right of subrogation that has either be[en] pled or introduced at trial here today, and I'll find in favor of Ms. Denson."

On September 25, 2015, the court filed its journal entry of judgment, summarizing the evidence and the court's findings announced at the close of evidence. State Farm timely appealed.

ANALYSIS

State Farm raises three issues in its brief, reordered here as follows: (1) whether the district court properly questioned State Farm's failure to plead subrogation when that had not been raised first by defendants; (2) whether the district court had substantial competent evidence to find that State Farm failed to plead its subrogation interest; and, (3) whether a landlord's rights against a tenant under K.S.A. 58-2555 extend to the landlord's subrogee.

3

*Questions raised by the district court concerning subrogation*

We first consider State Farm's argument that the district judge should not have asked any questions about how State Farm came to be the plaintiff in the case, making a claim for judgment arising from damage to Quint's property. Since these were not questions raised by Denson, State Farm, at least by implication, asserts the court abandoned its neutral role to bring forth defenses that had not been claimed by either defendant. State Farm maintains that, although the court appropriately could raise jurisdictional matters, subrogation is not a jurisdictional question and should not have been addressed first by the court. If State Farm's argument is correct, the principal basis for the district court's decision on the claim against Denson was reached improperly.

For reasons stated below, we find the questions posed to State Farm's counsel by the district court after the parties had rested were well within the ambit of the court's role in the bench trial to assess the claims and weigh the evidence. We first review the pleadings and evidence to provide the context for the district judge's questions.

State Farm's petition presented three introductory paragraphs, followed by two counts stating its separate claim against each of the two defendants, and a prayer for relief. Preliminarily, State Farm alleged it was the insurer for the affected property, that there was a fire as a result of negligence by "the tenant(s) and/or their guest(s)," and there were damages totaling $62,319.69. The petition next claimed that Denson was liable for the damage because she was renting the property at the time and, therefore, was responsible for the damages because of K.S.A. 58-2555. It then alleged that Lewis was negligent in the way he used a charcoal grill "which caught fire" and caused the damages. The petition asserted neither defendant had paid on demand. Significantly, State Farm did not plead the existence of a subrogation clause in its policy on the property or any other basis for its entitlement to pursue this claim. Neither did it allege that it had, in fact, made any payment for the damages.

4

The requirements for a sufficient petition in Kansas are minimal. In *Berry v. National Medical Services, Inc.*, 41 Kan. App. 2d 612, 614, 205 P.3d 745 (2009), *aff'd* 292 Kan. 917, 257 P.3d 287 (2011), this court summarized the obligation imposed on a plaintiff:

> "Kansas is a notice-pleading state. As a general rule, a petition need contain only '(1) [a] short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for judgment for the relief to which the pleader deems such pleader's self entitled.' K.S.A. 60-208(a). A legal theory for relief need not be detailed, so long as the petition apprises the defendant of the facts upon which the plaintiff claims to be entitled to relief."

Interpretation of a statute involves a question of law, reviewed on appeal de novo. In this case, although little was required by the statute, less was provided. State Farm did present a "short and plain statement of the claim," but it failed to assert its status under a subrogation agreement or even to allege that it had paid the property owner for the fire damage, thereby omitting an essential part of the obligations reviewed in *Berry*—showing why it was entitled to be before the court asking for relief from these defendants.

The evidence that State Farm presented at the trial did show that Quint owned the property and rented it to Denson, that there was a fire believed to have originated from a grill on the deck, that the damage was repaired at a cost of $62,319.69, and that State Farm insured the property and paid the bill. The evidence did not include testimony about, or documentation of, any policy subrogation rights favoring State Farm.

The trial court's first question after the close of evidence was, "how does State Farm become the plaintiff in this case seeking the damages to the property owner's house or residence?" The court was not raising defenses that Denson and Lewis failed to advance, but was fulfilling its duty to determine whether State Farm was, in fact, the real party in interest before ruling on its claims. The real party in interest is "'the party who,

5

by the substantive law, has the right sought to be enforced.'" *Torkelson v. Bank of Horton,* 208 Kan. 267, 270, 491 P.2d 954 (1971) (quoting 3A Moore's Federal Practice § 17.02 [2d ed. 1970]). See *Bank of Kansas v. Davison*, 253 Kan. 780, 783, 861 P.2d 806 (1993). The necessity for a real party in interest requirement was explained in *Larson Operating Co. v. Petroleum, Inc.*, 32 Kan. App. 2d 460, 465, 84 P.3d 626 (2004), as the court wrote:

> "The purpose of the real party in interest rule is principally to protect a 'defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action so that if a judgment be obtained it is a full, final and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party.' *Torkelson v. Bank of Horton,* 208 Kan. 267, 270, 491 P.2d 954 (1971)."

In the exchange following the trial court's question about the basis for State Farm's participation in the case, its counsel responded: "Your honor, it is through subrogation. It is contractual and the policy between State Farm and their insured and it is also statutory and is also recognized through common law." The court observed that subrogation through the policy or through common law was not pled and counsel stated he was unaware of any requirement for pleading subrogation. Then, after the judge also stated he had heard no evidence that Quint "ha[d] turned this over to State Farm to collect for whatever State Farm paid to him," and he could not tell whether anything in the lease supported that concept, counsel said State Farm was not relying on terms of the lease between Quint and Denson, "our position is throughout there has been the subrogation which is generally recognized under common law." The court made its finding that Denson had no obligation to State Farm.

We find no error in the district court's questioning about the basis for State Farm's status as a party. As an entity that had paid the loss in full, State Farm was the proper party to assert the claim. See *Dondlinger & Sons' Const. Co. v. EMCCO, Inc.*, 227 Kan. 301, 306, 606 P.2d 1026 (1980) (when the total amount of loss has been paid by the insurer, the right of action against the alleged wrongdoer rests in the insurer). But, at the

6

outset, State Farm failed to fulfill its basic obligation to plead its payment of the damages in full to establish its claim, and then it compounded that omission when it failed to place a policy subrogation clause into evidence. The court's diligence in questioning State Farm's right to assert a claim was justified.

*Sufficiency of evidence to support finding that State Farm failed to plead subrogation*

State Farm contends that it "pled enough facts" in its petition to establish its right to subrogation. It argues that the petition alleged: (1) State Farm provided insurance for the property; (2) there was a fire involving the property; and (3) the tenant's guest was negligent, providing all that was needed "to apprise Ms. Denson that State Farm would claim a subrogation interest in the action." The trial court's determination that the petition failed to plead subrogation sufficiently may be considered similar to a ruling on a motion to dismiss for failure to state a claim. That standard of review is:

> "'In essence, we [appellate courts] are required to assume that the facts alleged by the plaintiffs are true, and we are required to make any reasonable inference to be drawn from those facts. In addition, it is our duty to determine whether those pleaded facts and inferences state a claim, not only on the theory which may be espoused by the plaintiffs, but on any possible theory we can divine." *Decker v. Kansas Dept. of SRS*, 24 Kan. App. 2d 155, 156, 942 P.2d 667 (1997) (quoting *Noel v. Pizza Hut, Inc.,* 15 Kan. App. 2d 225, 231, 805 P.2d 1244, *rev. denied* 248 Kan. 996 [1991]).

As discussed above, the omission making this petition legally insufficient was the failure to include any allegations supporting its entitlement to claim relief. Beyond a bare statement about what happened, K.S.A. 2015 Supp. 60-208 requires that a petition show that the pleader is entitled to relief. The practical effect of failing to do so was shown in Denson's testimony when she expressed some confusion about State Farm's role, since her dealings had been with Quint. Assuming, as we must, that the facts alleged in the

7

petition are true, they still fall short of showing why State Farm is entitled to recover from the defendants, on any theory.

In its second line of argument, State Farm contends it presented uncontroverted evidence at trial that proved its entitlement to judgment on a subrogation theory. It points to: (1) Quint's testimony that he was the landlord, that he was insured by State Farm, and that State Farm paid him for a portion of the loss; (2) Mike Slater's testimony as the representative of State Farm that confirmed it was Quint's insurer and that it paid for the loss; and (3) State Farm introduced its claims file as an exhibit. It further argues that Denson did not contradict any of this evidence in her cross-examination or her direct testimony.

To evaluate this argument about the sufficiency of State Farm's evidence at trial, a brief review of the nature of subrogation in Kansas law is necessary. Our Supreme Court looked at this question in *Haysville U.S.D. No. 261 v. GAF Corp.*, 233 Kan. 635, 666 P.2d 192 (1983). The court wrote:

> "There are two kinds of subrogation: one which arises under a contract and one that has its origin and basis in equity, legal subrogation. Legal subrogation does not depend upon contract, assignment or privity. Legal subrogation allows one who has paid the debt of another to be substituted in the place of the original creditor.
> "To entitle a party to subrogation, he must pay the debt for which another is primarily responsible and such payment must generally be in full discharge of that party's obligation. Mere liability to pay is not ordinarily enough for one to be substituted to the rights of the creditor." 233 Kan. at 646.

State Farm has not argued in terms of these distinct categories of subrogation, although in the colloquy with the court at trial after the close of evidence, counsel did say that State Farm's subrogation was contractual through their policy, statutory through K.S.A. 58-2555, and "also recognized through common law."

8

The question is whether State Farm met its burden to prove *any* subrogation right. The district court concluded that State Farm had failed to show any obligation to it by Denson "through any right of subrogation . . . pled or introduced at trial."

> "When a district court concludes that a party failed to meet its burden of proof, the court has made a negative factual finding. Appellate review of such a finding is limited. The party challenging the finding must prove that the district court arbitrarily disregarded undisputed evidence or relied upon an improper extrinsic consideration such as bias, passion, or prejudice. [Citation omitted]." *Midwest Asphalt Coating v. Chelsea Plaza Homes*, 45 Kan. App. 2d 119, 125, 243 P.3d 1106 (2010).

State Farm admitted it had not pled any subrogation right in its petition. The uncontroverted evidence at trial, upon which State Farm now stands, also fails to establish a right to contractual subrogation. State Farm did not place any policy subrogation provision into evidence, and evidence of coverage and payment of a loss is not a sufficient substitute. Without the actual contract provision upon which State Farm claimed to be subrogated to Quint's rights, the district court had no means to assess the terms of any subrogation clause that might have been included in Quint's policy. Nor did it have any basis to measure how broadly or restrictively that clause might apply to the facts of the case.

Although the court may have thought it likely there was a subrogation clause in the State Farm policy, there was no evidence to that effect. Even if the district judge had assumed there was a subrogation clause, he certainly had nothing before him to suggest that all subrogation clauses contained in all policies of fire insurance issued by all carriers are identical—or, even if they were, what those identical terms might be.

There is no showing that the district court arbitrarily disregarded undisputed evidence or relied on any improper considerations. There was no error in finding State Farm failed to meet its burden of proof to show a right to subrogation by contract.

9

State Farm, however, was not altogether incorrect in arguing that it presented the necessary proof to show a subrogation interest to support its claim. The interest proven, however, was legal subrogation, not contractual.

The evidence showed that since State Farm provided payment to the owner and was not involved in the loss, it had the right to assert a claim through legal subrogation. Legal subrogation is based on the payment of an obligation on behalf of another who was primarily responsible. The district court found that Lewis was the negligent party—the one primarily responsible—and that finding is not challenged here. State Farm never claimed Denson was liable in the same way.  The judgment the district court granted to State Farm against Lewis is the one it requested and the one to which it was entitled by legal subrogation.

*K.S.A. 58-2555*

Finally, State Farm argues that it had a valid claim against Denson based on K.S.A. 58-2555, which imposed a duty on Denson in the event of damage to the rented property:

> "The tenant shall:
>
> . . . .
>
> "(f) be responsible for any destruction, defacement, damage, impairment or removal of any part of the premises caused by an act or omission of the tenant or by any person or animal or pet on the premises at any time with the express or implied permission or consent of the tenant."

State Farm did not allege that Denson was negligent or responsible for the property loss other than through Lewis' status as one who was on the property with her express or implied permission. As part of the Kansas Residential Landlord and Tenant

10

Act, K.S.A. 58-2540, *et seq.*, the duties of a tenant in K.S.A. 58-2555 are paired with the duties of a landlord in K.S.A. 58-2553. The statutory obligation under K.S.A. 58-2555(f) is to a landlord, not to a third party who pays for a loss.

State Farm would only be in a position to benefit from Denson's duties to her landlord, Quint, if it occupied Quint's position. That might or might not be a position that State Farm could have proven if it had shown a contractual subrogation right granted by Quint in his insurance policy. Since State Farm did not meet its burden of proof on contractual subrogation, it does not stand in Quint's place as the landlord-beneficiary of the obligations under K.S.A. 58-2555(f). We find this statute affords no basis for judgment against Denson.

*Conclusion*

We conclude that the district court properly questioned and identified the areas in State Farm's pleadings and proof that failed to support its claims against Denson. The court committed no error in entering judgment only against Lewis.

Affirmed.

11