NOT DESIGNATED FOR PUBLICATION

No. 124,348

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CATHY L. STROUD,
*Appellant*,

v.

OZARK NATIONAL LIFE INSURANCE CO. and STEPHEN I. GUINN,
*Appellees*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed June 10, 2022.
Affirmed.

*Roger K. Wilson*, of Arn, Mullins, Unruh, Kuhn & Wilson, LLP, of Wichita, for appellant.

*William E. Hanna* and *Christina J. Hansen*, of Stinson LLP, of Wichita, for appellees.

Before ARNOLD-BURGER, C.J., GREEN, J., and RICHARD B. WALKER, S.J.

PER CURIAM: Cathy L. Stroud appeals the trial court's order granting Ozark National Life Insurance Co. and Stephen Guinn's summary judgment motion, resulting in the dismissal of her breach of fiduciary duty, negligent misrepresentation, and vicarious liability claims. Cathy contends that contrary to the trial court's ruling, Guinn—her deceased husband Alan Stroud's former insurance agent—violated his fiduciary duty to Alan and her when giving advice about converting Alan's term life insurance into whole life insurance. She also challenges the trial court's ruling that she was not the real party in interest under K.S.A. 2020 Supp. 60-217(a)(1) to bring her claims. And for these same reasons, she argues that the trial court erred by dismissing her vicarious liability claim.

1

Nevertheless, under Kansas law, the trial court correctly dismissed Cathy's claims. As a result, we affirm the trial court's summary judgment ruling.

FACTS

The following facts are undisputed in the context of the trial court's summary judgment ruling:

On April 8, 2002, Alan bought a 20-year term life insurance policy from Gene Spoon, an Ozark insurance agent. In the event of Alan's death, a $60,000 death benefit would be paid to Cathy, who was the sole beneficiary listed on Alan's policy. According to the premium schedule given to Alan, Alan's annual premium on his 20-year term life insurance policy was $400.80 per year for the first 15 years he owned the policy. If Alan decided to renew his policy following the fifteenth year, his annual premium increased to $1,250.40. Then, if Alan decided to renew his policy following the twentieth year, Ozark would increase his annual premium to $1,847.

In January 2019, Alan had a hemorrhagic stroke. The stroke affected Alan's coordination, ability to read, and ability "to deal with numbers." Also, after having the stroke, doctors discovered that Alan needed aorta heart surgery. Because very few doctors perform the specific surgery Alan needed, Alan had to travel to Houston, Texas, for his surgery. Additionally, before Alan could have his heart surgery, Alan's brain needed to adequately heal from his hemorrhagic stroke. So, in early to mid-2019, Alan was working on recovering from his stroke so he could be healthy enough to have heart surgery. Then, as soon as Alan was healthy enough for the heart surgery, he would go to Houston for the operation.

On May 5, 2019, Guinn called the Strouds hoping to speak about Alan's term life insurance policy. When Cathy answered the phone, Guinn told her that he "needed" to

talk to Alan about his term life insurance policy. He explained that he wanted to schedule an in-person visit to do this. Although Cathy asked Guinn whether Spoon—the Ozark agent who sold Alan the term life insurance policy—was still working for Ozark, Guinn did not directly respond to Cathy's question. Afterwards, Cathy told Guinn that given Alan's "upcoming imminent life and death surgery," they should all talk about Alan's term life insurance policy as soon as possible.

On May 6, 2019, Guinn went to the Strouds' home to discuss Alan's term life insurance. During this meeting, the Strouds discussed Alan's health problems in detail. They explained to Guinn that as soon as Alan's doctors told him that his brain was well-enough for the heart surgery, Alan would go to Houston for the operation.

At some point during the conversation, Guinn told the Strouds that "the premiums on [Alan's] life insurance policy were going to drastically . . . increase and that the Strouds needed to change [Alan's] term life insurance policy to a whole life insurance policy before that happened." After learning this, the Strouds "expressed . . . concerns that if the premiums on the term policy increased when they were in Houston, Texas for [Alan's] surgery, they wouldn't have enough money in their account from which the premiums were being automatically drawn, to cover the amount of the increased premiums." Guinn told the Strouds that if Alan missed a premium payment, Alan's term life insurance policy would be cancelled. And he explained that because of Alan's health problems, Alan would probably not qualify for a new life insurance policy upon its cancellation.

Although not necessarily in the context of Alan's health, Guinn discussed converting Alan's term life insurance policy with a $60,000 death benefit into a whole life insurance policy with a $30,000 death benefit. Guinn explained to the Strouds that Alan's premium would never increase under a whole life insurance policy. He also explained that Alan would not have to prove his insurability—that is, prove that he was in good

3

health—by converting his term life insurance policy to a whole life insurance policy; this is something Alan would have to do if he bought a new policy.

By the end of the meeting, Alan had converted his term life insurance policy naming Cathy as the sole beneficiary into a whole life insurance policy naming Cathy as the sole beneficiary. Alan signed the necessary paperwork and paid the first annual premium on his whole life insurance policy, which was $1,538. *Thus, by the end of the May 6, 2019 meeting with Guinn, Alan converted his term life insurance policy with a $60,000 death benefit and current annual premium of $1,250.40 to a whole life insurance policy with a $30,000 death benefit and annual premium of $1,538. Alan did this although he still had about 2 years and 11 months before Ozark would increase the premium on his term life insurance policy to $1,847.*

On August 1, 2019, Alan had his aorta heart surgery in Houston. Unfortunately, Alan never recovered from his surgery, dying on August 25, 2019.

Following Alan's death, Ozark paid Cathy the $30,000 death benefit as required under its whole life insurance policy with Alan. This upset Cathy. In a letter to Ozark's legal department, Cathy asked Ozark if it could pay her the $60,000 death benefit associated with Alan's term life insurance policy. To support her request, Cathy alleged that Guinn told Alan and her that Alan "had" to get the whole life insurance policy because "that was all [Alan and her] could afford for the new premiums." She asserted: "[Guinn] said that [Alan] needed to upgrade [his term life insurance policy] because of Alan's age and that if [he] didn't upgrade to the whole life insurance [policy] that [Alan] could end up with nothing as Alan may not be able to obtain any life insurance because of his [medical] condition[s]." She also suggested that but for Guinn's advice, Alan would not have converted his term life insurance into whole life insurance.

After Ozark rejected Cathy's request, Cathy sued Ozark and Guinn. In her petition, under a single cause of action, Cathy argued that she was entitled to the $30,000 difference between Alan's term life insurance and whole life insurance policies' death benefits because Guinn breached his fiduciary duty to Alan *and* her by not advising "them in their best interests" about converting Alan's term life insurance. She argued she was also entitled to this money because Guinn negligently misrepresented information to Alan *and* her about converting Alan's term life insurance. She argued that Guinn told Alan and her that Alan "need[ed]" to convert his term life insurance into whole life insurance because his annual premium was going to "drastically increase" in the near future. She suggested that Guinn negligently misrepresented the information about converting Alan's term life insurance so he could receive a commission from selling a new insurance policy. Additionally, she argued that Ozark was vicariously liable for Guinn's tortious conduct since Guinn was acting as Ozark's agent when he gave Alan and her the disputed advice about converting Alan's term life insurance into whole life insurance.

In a joint answer, Ozark and Guinn denied engaging in any tortious conduct. As an affirmative defense, they asserted that Cathy was not the proper party to bring the breach of fiduciary duty, negligent misrepresentation, and vicarious liability claims.

Eventually, Ozark and Guinn moved for summary judgment. In this motion, Ozark and Guinn argued that the trial court should dismiss all of Cathy's claims for the following reasons: (1) Cathy was not the real party in interest to bring the claims against them; (2) Guinn owed neither Alan nor Cathy a fiduciary duty; (3) Cathy could not establish that Guinn made a false statement constituting a negligent misrepresentation; and (4) Cathy could not otherwise establish that Alan relied on Guinn's alleged negligent misrepresentation.

5

In their first argument, Ozark and Guinn asserted that *Spencer v. Aetna Life & Casualty Insurance*, 227 Kan. 914, 611 P.2d 149 (1980), stood for the proposition that insurers have no fiduciary duty to the insured in a "first party relationship" situation. According to Ozark and Guinn, this meant that insurers never have a fiduciary duty to the insured absent a dispute with a third party—that is, a third party making a claim against the insured. Relying on this interpretation of *Spencer*, they concluded that Guinn owed neither Alan nor Cathy a fiduciary duty because Guinn was an agent for Ozark which had a first-party relationship with Alan and Cathy. As for their argument that Cathy was not the real party in interest, Ozark and Guinn asserted that because K.S.A. 2020 Supp. 60-217(a)(1) required all actions to "be prosecuted in the name of the real party in interest," Cathy could not sue them in her own right for breaching any legal duty owed to Alan. Instead, relying on *Patterson v. Midland Care Connection, Inc.*, Case. No., 118,359, 2019 WL 1213246 (Kan. App. 2019) (unpublished opinion), they argued that Cathy needed to bring any tort claim Alan could have brought in life as the executor of Alan's estate.

In her response, Cathy argued that Guinn knew that Alan and she were relying on his advice. So, she asserted that despite Ozark and Guinn's argument to the contrary, Guinn created a fiduciary relationship with Alan and her through his interactions with them on May 5, 2019, and May 6, 2019. She argued that Ozark and Guinn's reliance on *Spencer* was misplaced, asserting they had an errant interpretation of the opinion. Additionally, she cited *Marshel Investments, Inc. v. Cohen*, 6 Kan. App. 2d 672, 683, 634 P.2d 133 (1981), in which this court held:

> "[A]n insurance agent or broker who undertakes to procure insurance for another owes to the client the duty to exercise the skill, care and diligence that would be exercised by a reasonably prudent and competent insurance agent or broker acting under the same circumstances."

Cathy argued that this precedent proved that insurers have a fiduciary duty to the insured. Cathy also asserted that she was the real party in interest under K.S.A. 2020 Supp. 60-217(a)(1) to bring her breach of fiduciary duty, negligent misrepresentation, and vicarious liability claims. According to Cathy, she was the real party in interest because she was "bring[ing] her claims on her own behalf in this case as the beneficiary of her husband's $60,000.00 life insurance policy which was terminated because of the wrongful conduct of [Guinn]." She argued that this fact distinguished her case from *Patterson* because in *Patterson*, a daughter sued in her own name for a hospice provider's negligent care of her now deceased father. She stressed that she directly suffered Guinn's alleged wrongdoing because she received $30,000 less in death benefits. And she pointed out that in Iowa, beneficiaries may sue life insurers in their own right in limited circumstances. See *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 106 (Iowa 2012).

Ultimately, the trial court granted Ozark and Guinn's summary judgment motion. The trial court dismissed Cathy's breach of fiduciary duty cause of action for several reasons. First, it determined that *Spencer*'s precedent established that Guinn owed neither Alan nor Cathy a fiduciary duty. Second, citing caselaw establishing that a person cannot unilaterally impose a fiduciary relationship onto another, it determined that Cathy had not otherwise presented any evidence that Guinn had a fiduciary duty to her. See *Linden Place, LLC v. Stanley Bank*, 38 Kan. App. 2d 504, 510, 167 P.3d 374 (2007). Third, citing K.S.A. 2020 Supp. 60-217(a)(1) and *Patterson*, it determined that if Guinn owed a fiduciary duty to Alan, then Cathy "need[ed] to open an estate and sue in his name."

Next, the trial court dismissed Cathy's negligent misrepresentation cause of action, finding that undisputed material facts established that it failed as a matter of law. It explained that to establish the tort of negligent misrepresentation, a party must prove (1) that the alleged wrongdoer supplied false information and (2) that the party later relied on this false information. It found that Cathy failed to prove the preceding elements because she had "not specified any information that was supplied to her by [Ozark or Guinn] that

7

was false" and had "not specified any information . . . show[ing] that [Alan] relied on this false information." Finally, it dismissed Cathy's vicarious liability claim since it hinged on her breach of fiduciary duty and negligent misrepresentation claims that it had just rejected.

Cathy timely appeals.

ANALYSIS

*Did the trial court err by granting Ozark and Guinn's summary judgment motion?*

On appeal, Cathy argues that the trial court made several errors when granting Ozark and Guinn's summary judgment motion. Citing *Marshel Investments, Inc.*, Cathy argues that Ozark and Guinn owed Alan and her a fiduciary duty when giving advice about converting his term life insurance into whole life insurance. She argues that the trial court misinterpreted *Spencer* in determining that Guinn had no fiduciary relationship with Alan and her. And she argues that Guinn's behavior on May 5, 2019, and May 6, 2019, prove that Guinn created a fiduciary relationship with Alan and her. As for the trial court's real party in interest findings, Cathy contends that Iowa's *Pitts* decision supports that she, as Alan's beneficiary, may sue Ozark and Guinn. She suggests that allowing life insurance beneficiaries to sue for an insurer's negligent treatment of the insured is no different than allowing beneficiaries to sue an attorney for malpractice for negligently drafting a will or trust—a concept our Supreme Court has approved of in limited circumstances in *Pizel v. Zuspann*, 247 Kan. 54, Syl. ¶ 5, 795 P.2d 42, *opinion modified on other grounds* 247 Kan. 699, 803 P.2d 205 (1990). Cathy also argues that the trial court's reliance on *Patterson* was misplaced since she is bringing "her claims on her own behalf . . . as the beneficiary of [Alan's] $60,000.00 [term] life insurance policy."

8

In addition to the preceding, Cathy argues that she presented evidence that Guinn made a false statement and that Alan relied on this false statement. Cathy argues that contrary to the trial court's finding, there were genuine issues of material fact as to whether Guinn made false statements and whether Alan relied on those false statements. She further contends that because the trial court erred by dismissing her breach of fiduciary and negligent misrepresentation claims, the trial court necessarily erred by dismissing her vicarious liability claim.

Ozark and Guinn's response repeats the arguments in their summary judgment motion—arguments that the trial court largely adopted when granting their motion. Relying on *Spencer*, they argue that Guinn had no fiduciary duty to either Alan or Cathy because *Spencer* stands for the proposition that no fiduciary duty exists in first-party relationships between the insurer and the insured unless a third-party is making a claim against the insured. They argue that if Guinn owed Alan a fiduciary duty, Alan was the real party in interest under K.S.A. 2020 Supp. 60-217(a)(1) to sue for Guinn's alleged wrongful conduct. Also, they argue that because Cathy's breach of fiduciary duty and negligent misrepresentation claims were baseless, the trial court properly dismissed Cathy's vicarious liability claim. Hence, Ozark and Guinn ask us to affirm the trial court's ruling because the trial court made no errors when granting its summary judgment motion.

As considered below, although the trial court sometimes relied on erroneous reasoning, it correctly granted Ozark and Guinn's summary judgment motion. Accordingly, we affirm the trial court's order of summary judgment, dismissing Cathy's breach of fiduciary duty, negligent misrepresentation, and vicarious liability claims. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) (holding that appellate court may affirm trial court's decision if it reached correct result even though it relied on erroneous reasoning in reaching correct result).

9

a. *Standard of Review*

Our standard for reviewing a trial court's summary judgment ruling is well-known:

"'"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

Generally, a trial court should be hesitant to grant summary judgment motions for negligence claims. *Elstun v. Spangles, Inc.*, 289 Kan. 754, 757, 217 P.3d 450 (2009). When considering negligence claims, in most instances, it is proper to grant summary judgment on questions of law only. *Martin v. Naik*, 297 Kan. 241, 245, 300 P.3d 625 (2013). Because the existence of a duty of care is a question of law, the trial court may grant a defendant's summary judgment motion when the record and arguments reveal that the defendant had no duty to act in a certain manner towards the plaintiff. *Elstun*, 289 Kan. at 757. We exercise unlimited review on issues concerning the existence of a duty of care. 289 Kan. at 758.

As for real party in interest issues, there is limited caselaw on our review of a trial court's ruling that a plaintiff is not a real party in interest. All the same, this caselaw supports that the question of whether a party is a real party in interest is a question of law over which we exercise unlimited review. *Leavenworth/Lansing Physicians Bldg., LLC v.*

*Cristiano*, No. 102,699, 2010 WL 4977144, at *8 (Kan. App. 2010) (unpublished opinion); *FinanceCo of Kansas, Inc. v. Ledin*, No. 102,836, 2010 WL 2509971, at *3 (Kan. App. 2010) (unpublished opinion); *Parks v. Benchmark, Ins. Co.*, No. 101,697, 2010 WL 445951, at *5 (Kan. App. 2010) (unpublished opinion). Also, to the extent that review of the trial court's real party in interest ruling involves interpreting K.S.A. 2020 Supp. 60-217(a)(1), interpretation of a statute constitutes a question of law over which we exercise unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

### b. *Elements*

"The requirements of a claim of breach of fiduciary duty are existence of a duty, breach of that duty, and damages resulting from the breach." *Schneider v. Kansas Securities Comm'r*, 54 Kan. App. 2d 122, 152, 397 P.3d 1227 (2017). A person has a legal duty as a fiduciary when he or she has a fiduciary relationship with another. To establish the existence of a fiduciary relationship, a person must prove that he or she placed "a special confidence'" in another "'who, in equity and good conscience, [was] bound to act in good faith and with due regard to [his or her] interests.'" *Linden Place, LLC*, 38 Kan. App. 2d at 509.

Our Supreme Court has refused to give an exact definition of a fiduciary relationship because the existence of a fiduciary relationship between parties hinges on the facts and circumstances of each individual case. 38 Kan. App. 2d at 509. Even so, there are generally just two types of fiduciary relationships. The first type of fiduciary relationship is created by a contract or formal legal proceedings. 38 Kan. App 2d at 509. The second type of fiduciary relationship is "'implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions. The determination of the existence of a fiduciary

relationship in the second category is more difficult to determine. [Citation omitted.]'" 38 Kan. App. 2d at 509.

The requirements to establish a negligent misrepresentation claim are somewhat similar. All negligent misrepresentation claims involve a person "who in the course of any transaction in which he or she has a pecuniary interest, supplies false information for the guidance of another person." *Stechschulte v. Jennings*, 297 Kan. 2, 22, 298 P.3d 1083 (2013). In that context, the person who supplied false information will be liable for damages the other person suffered by relying on this false information if the other person establishes the following:

> "(1) the person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating the false information; (2) the person who relies upon the information is the person for whose benefit and guidance the information is supplied; and (3) the damages are suffered in a transaction that the person supplying the information intends to influence." 297 Kan. at 22.

It is important to note that it is more difficult to prove a breach of a fiduciary duty than negligent misrepresentation. To prove the legal duty element of negligent misrepresentation, a person needs to establish only that the alleged wrongdoer had a pecuniary interest in the disputed transaction. On the other hand, to prove the legal duty element of breach of a fiduciary duty, a person must prove that because of a special relationship, the alleged wrongdoer was obligated to act in his or her best interests during the disputed transaction. So it is possible for a person to prove that the alleged wrongdoer negligently misrepresented information without establishing that the alleged wrongdoer breached his or her fiduciary duty.

As for the elements of vicarious liability, vicarious liability claims make one party legally liable for the wrongful conduct of another based on that party's relationship to the alleged wrongdoer. This court has explained that "'[v]icarious liability is a term generally

12

applied to legal liability which arises solely because of a relationship and not because of any actual act of negligence by the person held vicariously liable for the act of another.'" *Long v. Houser*, 57 Kan. App. 2d 675, 677, 456 P.3d 549 (2020). Thus, to establish a vicarious liability claim, a person must first prove his or her underlying claims against the alleged wrongdoer.

c. *Preliminary Matters*

First, although neither the parties nor the trial court have recognized it, Cathy has raised *two* breach of fiduciary duty and *two* negligent misrepresentation claims in her pleadings. In her petition, Cathy pleaded a single cause of action entitled, "Breach of Fiduciary Duty," and a single cause of action entitled, "Negligent Misrepresentations." In both causes of action, Cathy contended that Guinn created a fiduciary relationship with Alan *and* with her that he violated. It is important to note that Cathy's negligent misrepresentation cause of action relied on Guinn's disputed fiduciary duty to Alan and to her. For example, Cathy argued that Guinn's fiduciary duty to Alan and Guinn's fiduciary duty to her was the legal duty that should have prevented Guinn from negligently misrepresenting information about converting Alan's term life insurance policy into a whole life insurance policy.

But by asserting that Guinn created a fiduciary relationship with both Alan *and* her, Cathy addressed distinct disputed rights—Guinn's alleged fiduciary duty to Alan as the insured as well as Guinn's alleged fiduciary duty to her as the beneficiary. Although Cathy's arguments treat Guinn's alleged fiduciary duty to Alan and to her as a single fiduciary duty, *Guinn may owe Alan a fiduciary duty as the insured without owing Cathy a fiduciary duty as the beneficiary*. Of further note, the tort of negligent misrepresentation is confined to those for whose benefit the alleged wrongdoer supplied the information and whom the alleged wrongdoer intended to influence. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 937, 305 P.3d 622 (2013). Thus, although Cathy alleges that Guinn

13

negligently misrepresented information to Alan and to her jointly, *Guinn may have intended to influence Alan without intending to influence her*.

In her reply brief, Cathy seemingly argues that her claims against Ozark and Guinn have always been clearly defined. There, she stresses that she "is claiming a breach of fiduciary duty by [Guinn] owed to [Alan] and a breach of fiduciary duty owed to her." This is true. Cathy has consistently argued that Guinn violated his fiduciary duty to Alan and to her. But as indicated by the plain language of her breach of fiduciary duty cause of action, at many points throughout the pendency of her case, Cathy has referred to Guinn's fiduciary duty to Alan and to her as a combined claim. And Cathy never recognizes that Guinn could have negligently misrepresented information to Alan without negligently misrepresenting information to her. Thus, Cathy's claims are confusing for several reasons.

In any case, because Cathy alleged that Guinn breached his fiduciary duty to Alan *and* to her as well because he made negligent misrepresentations to both Alan *and* her, Cathy has pleaded the following four claims: (1) that Guinn breached his fiduciary duty to Alan when advising Alan about converting his term life insurance policy, which she can sue for as the beneficiary of Alan's term life insurance policy; (2) that Guinn negligently misrepresented information to Alan about converting Alan's term life insurance policy, which she can sue for as the beneficiary of Alan's term life insurance policy; (3) that Guinn breached his fiduciary duty to her as the beneficiary of Alan's term life insurance policy when giving advice about converting Alan's term life insurance policy; and (4) that Guinn negligently misrepresented information to her about converting Alan's term life insurance policy.

Second, we note that the trial court never addressed whether Cathy was the real party in interest under K.S.A. 2020 Supp. 60-217(a)(1) to bring her negligent misrepresentation claims when it dismissed those claims. Also, it never addressed

14

whether Cathy could sue for negligent misrepresentation because Guinn owed Alan and her a legal duty when giving advice about converting Alan's term life insurance policy to a whole life insurance policy. Rather, the trial court ruled that Cathy failed to establish elements of negligent misrepresentation—that Guinn made a false statement and that Alan relied on this false statement.

Even so, if Cathy was not the real party in interest to sue for breach of fiduciary duty based on Guinn's alleged violation of his fiduciary duty to Alan, then it necessarily follows that she was not the real party in interest to sue for Guinn's alleged negligent misrepresentation to Alan. Thus, the trial court implicitly ruled that Cathy was not the real party in interest to sue for Guinn's alleged negligent misrepresentation to Alan. Therefore, if we were to assume that the trial court correctly ruled that Cathy was not the real party in interest to sue for breach of Alan's fiduciary duty, we may rely on the trial court's implicit real party in interest ruling to affirm its dismissal of Cathy's claim that Guinn negligently misrepresented information to Alan. On the other hand, if the record reveals that the trial court properly dismissed Cathy's negligent misrepresentation claims because Guinn owed neither Alan nor her a fiduciary duty or because she was not the real party in interest, we may affirm the trial court as being right for the wrong reason. See *Gannon*, 302 Kan. at 744.

With this understanding, we will consider the following arguments of the parties: (1) whether Guinn owed a fiduciary duty to Alan or to Cathy, (2) whether Guinn sought to influence Cathy, and (3) whether Cathy constituted a real party in interest who could sue in her own name for injuries that occurred to Alan during Alan's lifetime.

d. *Fiduciary Duty*

The primary case that Ozark and Guinn rely on to argue that Guinn had no fiduciary duty is *Spencer v. Aetna Life & Casualty Insurance*. In *Spencer*, our Supreme

15

Court considered whether Kansas recognized the tort of bad faith against an insurance company. 227 Kan. at 914. The insured, whose house had burned down, attempted to sue her insurance company for its alleged wrongful conduct in settling her fire loss claim. In ruling that Kansas does not recognize the tort of bad faith, our Supreme Court addressed an insurer's fiduciary duty to the insured *in settling claims*. It explained that the existence of a fiduciary duty depends on whether the claim is being brought by the insured or against the insured. It described claims being brought by the insured as "first party relationships" while it described claims brought against the insured as "third party relationships." 227 Kan. at 920-21.

In discussing an insurer's duty to the insured in third party relationships, our Supreme Court explained:

> "'In defending and settling claims against its insured, the insurer of a liability or indemnity policy owes to the insured the duty to act in good faith and without negligence; failure to do so will result in the insurer being held liable for the full amount of the insured's resulting loss, even if that amount exceeds policy limits.'" 227 Kan. at 920.

In contrast, our Supreme Court explained that in first party relationships, the insurer has no fiduciary duty to the insured because the settlement process places them in an adversarial relationship:

> "The first party relationship is distinguishable from the third party situation. In third party claims, the absolute control of the trial and settlement is in the hands of the insurer. That control gives rise to a fiduciary relationship between the insurer and its insured. In first party claims the insurer is not in a position to expose the insured to a judgment in excess of policy limits through its unreasonable refusal to settle a case nor is the insurer in exclusive control of the defense." 227 Kan. at 922.

16

So, *Spencer* stands for the proposition that when settling claims brought by third parties against the insured, the insurer has a fiduciary duty to the insured. By contrast, the insurer does not have a fiduciary duty to the insured when settling claims brought by the insured on behalf of himself or herself. In those situations, the insured and the insurer are in a first-party adversarial relationship.

Although the trial court adopted Ozark and Guinn's argument that insurers never owe the insured a fiduciary duty absent a third-party claim against the insured, it read *Spencer* too broadly. *Spencer* involves the specific situation of settling the insured's claims. It does not involve procuring insurance for the insured or giving advice to an insured about insurance policies. Therefore, the trial court erred by relying on *Spencer* to hold that Guinn owed neither Alan nor Cathy a fiduciary duty.

Next, the main case Cathy relies on to support her argument that Guinn owed Alan and her a fiduciary duty is *Marshel Investments, Inc. v. Cohen.* There, the insured asked the insurance agent for complete coverage on an oil well. But the agent secured only a comprehensive general liability insurance policy that did not cover losses caused by a later fire at the well. On appeal after the trial court reversed the jury's verdict in favor of the insured, this court considered what duty, if any, the agent owed to the insured. After reviewing caselaw, it held:

> "[W]e conclude an insurance agent or broker who undertakes *to procure insurance for another* owes to the client the duty to exercise the skill, care and diligence that would be exercised by a reasonably prudent and competent insurance agent or broker acting under the same circumstances. We will refer to this as the exercise care duty." (Emphasis added.) 6 Kan. App. 2d at 683.

Perhaps a liberal reading of the preceding holding supports that Guinn formed a fiduciary relationship with Alan and Cathy. Nevertheless, since deciding *Marshel Investments, Inc.*, this court has consistently held that the preceding holding meant that an

17

insurance agent has a duty to act on *explicit insurance requests* from their clients. And in doing so, this court has consistently rejected arguments such as the appellant makes here interpreting the *Marshel Investments, Inc.* holding as meaning that insurance agents have a duty to advise clients about their insurance-related choices. See *Carpenter v. Bolz*, No. 101,679, 2010 WL 2977937, at *6-7 (Kan. App. 2010) (unpublished opinion); *Duncan v. Janosik, Inc.*, No. 99,459, 2009 WL 743579, at *3 (Kan. App. 2009) (unpublished opinion); *Benskin v. Anderson Insurance Agency, Inc*., No. 86,976, 2002 WL 35657473, at *5 (Kan. App. 2002) (unpublished opinion).

Here, Cathy's complaint is not that Guinn failed to get Alan the life insurance coverage he requested. Instead, her complaint is that Guinn hid or neglected to tell Alan and her important information about the advisability of converting Alan's term life insurance policy into a whole life insurance policy. Thus, *Marshel Investments, Inc.* does not support Cathy's contention that Guinn owed either Alan or her a fiduciary duty. Her case does not involve the insurer's failure to procure insurance requested by the insured. Guinn procured whole life insurance for Alan as Alan requested after receiving Guinn's *advice*.

Concerning an insurance agent's advice, this court has long held that "[*a*]*bsent a specific agreement to do so*, an insurance agent does not have a continuing duty to advise, guide, or direct an insured's coverage after the agent has complied with his obligation to obtain insurance coverage on behalf of the insured." (Emphasis added.) *Marshall v. Donnelli*, 14 Kan. App. 2d 150, Syl. ¶ 1, 783 P.2d 1321 (1989). Likewise, in *Marshel Investments, Inc.*, this court explained:

> "It has been explicitly stated an action for the breach of this duty may be brought in contract or in tort. Although no Kansas cases reveal particular exposition of legal analysis for the ability to bring the action on these alternative theories, it might be said the duty is both an implied contractual term of the undertaking (contract duty) and a part

of the fiduciary duty owed the client by reason of the principal-agent relationship arising out of the undertaking (tort duty)." 6 Kan. App. 2d at 683.

This means that unless the insurance agent is contractually obligated to do so, an insurance agent has no fiduciary duty to advise the insured. See also *Duncan*, 2009 WL 743579, at *4 (discussing *Marshel Investments, Inc.*'s explanation of an insurance agent's duty to advise as being based in contract). Thus, to successfully establish that an insurance agent violated a fiduciary duty by giving bad advice, the insured must prove that the agent was contractually obligated under his or her policy to give reasonable advice.

Cathy argues that Guinn's conduct on May 5, 2019, and May 6, 2019, created a fiduciary relationship with Alan and her. She does not rely on Alan's life insurance policies to argue that a fiduciary relationship existed. But based on *Marshall*'s authority, the facts surrounding Guinn's conduct could not have created a fiduciary relationship between Guinn and Alan and Guinn and her. Rather, if Guinn had a fiduciary duty to either Alan or her, that fiduciary relationship had to arise from contract. Even if we ignored this problem, though, it is undisputed that Cathy had no life insurance policy with Ozark; thus, there was no contractual provision creating a fiduciary relationship between Guinn and Cathy. Also, neither Alan's term life insurance policy nor his whole life insurance policy required Guinn to provide advice that was in Alan's best interests. It therefore follows that Guinn had no contractual fiduciary duty to either Alan or Cathy to provide advice in either Alan or Cathy's best interests.

In turn, although the trial court relied on the wrong reasoning, it correctly granted Ozark and Guinn's summary judgment motion as to Cathy's breach of fiduciary duty claims. Alan's life insurance policies did not require Guinn to provide sound advice. Accordingly, Guinn could not have violated his breach of fiduciary duty to Alan by giving Alan what seemed to be unsound advice. Because Cathy had no insurance policy

with Ozark, it is readily apparent that Guinn owed no fiduciary duty to Cathy. Then the trial court properly dismissed Cathy's claim (1) that Guinn breached his fiduciary duty to Alan, which she can sue under as Alan's term life insurance beneficiary and (2) that Guinn breached his fiduciary duty to her.

e. *Guinn's Influence*

As just noted, Cathy did not have a life insurance policy with Ozark. Also, it is an undisputed fact that Guinn's discussions with Alan and Cathy on May 5, 2019, and May 6, 2019, involved converting Alan's term life insurance policy into a whole life insurance policy.

The preceding facts undermine Cathy's contention that Guinn could have negligently misrepresented information to her about converting Alan's term life insurance policy into a whole life insurance policy. Again, the tort of negligent misrepresentation "confines the universe of potential claimants to those for whose benefit the defendant supplied the information and whom the defendant intended to influence." *Rinehart*, 297 Kan. at 937. Here, if Guinn supplied false information for the guidance of anyone, he supplied the false information to guide Alan. Alan was the person Guinn needed to convince to convert his term life insurance policy into a whole life insurance policy to obtain a commission. Although Alan and Cathy may have discussed financial decisions, that does not matter since Alan owned his term life insurance policy in its entirety. It stated that while he was living, unless he assigned his policy to another person or named an irrevocable beneficiary, he had sole control of the policy. In fact, under the plain language of Alan's term life insurance policy and under Kansas law, Cathy had no vested interest in Alan's term life insurance policy until Alan's death. See *Tromp v. National Reserve Life Ins. Co.*, 143 Kan. 98, Syl. ¶ 1, 53 P.2d 831 (1936) (holding that unless the insured names an irrevocable beneficiary, the beneficiary of a life insurance policy has no vested interest in the death benefits under the insured's policy until the insured's death).

As a result, even if we were to assume that Guinn negligently misrepresented information about converting Alan's term life insurance policy, Cathy does not have a negligent misrepresentation claim against Guinn because Guinn negligently misrepresented the information to influence Alan—the term life insurance policy owner. Simply put, any influence Guinn had on Cathy, even though she was Alan's beneficiary, was irrelevant. Thus, Cathy's claim that Guinn negligently misrepresented information to her about converting Alan's term life insurance policy into a whole life insurance policy fails as a matter of law.

On the other hand, it is important to note the trial court's actual reasoning for dismissing Cathy's negligent misrepresentation claims was questionable. The trial court found that Cathy failed to produce any evidence that Guinn supplied false information and that Alan relied on the allegedly false information. Regarding the trial court's finding that Cathy failed to produce any evidence that Guinn supplied false information, Ozark and Guinn argue that Cathy's claim is more akin to a fraud by silence claim. Regardless of this argument, a trial court should be hesitant to grant summary judgment on negligence claims. *Elstun*, 289 Kan. at 757. Our Supreme Court has recently explained that to present a prima facie case of negligence to survive summary judgment, a plaintiff does not need to present direct evidence. Instead, a plaintiff may rely on circumstantial evidence that does "not exclude every other reasonable conclusion as long as it forms a basis from which a jury could draw a reasonable inference." *Montgomery v. Saleh*, 311 Kan. 649, 663, 466 P.3d 902 (2020).

Here, Cathy's complaint was that Guinn told Alan and her that Alan "need[ed]" to convert his term life insurance policy into a whole life insurance policy. Given (1) that Alan had nearly three years left on his term life insurance policy before his premiums would increase again, (2) that Guinn's advice resulted in Alan's annual premium payment increasing immediately, and (3) that Guinn knew of Alan's severe health situation, Guinn's contention that Alan needed to convert his term life insurance policy into a whole

21

life insurance policy could be construed as false information. Also, contrary to the trial court's finding, it is readily apparent that Alan relied on Guinn's advice about converting his term life insurance policy into a whole life insurance policy. Alan converted his term life insurance policy to a whole life insurance policy by the end of the May 6, 2019 meeting with Guinn. Given this fact, the trial court's finding that Cathy failed to present evidence that Alan relied on Guinn's allegedly false information was unreasonable. Thus, we reject the trial court's specific reasoning for denying Cathy's negligent misrepresentation claims.

### f. *Real Party in Interest*

To review, our discussion in the preceding sections show that the trial court properly dismissed Cathy's claims against Guinn for the following: (1) that Guinn breached his fiduciary duty to Alan when advising Alan about converting his term life insurance policy to a whole life insurance policy, which she can sue under as the beneficiary of Alan's term life insurance policy; (2) that Guinn breached his fiduciary duty to her as the beneficiary of Alan's term life insurance policy when giving advice about converting Alan's term life insurance policy into a whole life insurance policy; and (3) that Guinn negligently misrepresented information to her about converting Alan's term life insurance policy into a whole life insurance policy. Thus, the only claim that we have not addressed is Cathy's claim that Guinn negligently misrepresented information to Alan about converting Alan's term life insurance policy into a whole life insurance policy, for which she can maintain an action as the beneficiary of Alan's term life insurance policy.

K.S.A. 2020 Supp. 60-217(a)(1) states that "[a]n action must be prosecuted in the name of the real party in interest." It goes on to say that some parties "may sue in their own names without joining the person for whose benefit the action is brought." K.S.A.

2020 Supp. 60-217(a)(1). This includes a party suing as an executor or an administrator of another's estate. K.S.A. 2020 Supp. 60-217(a)(1)(A)-(B).

Our Supreme Court has held that the real party in interest rule requires that "'[*a*]*n action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced*.'" *Torkelson v. Bank of Horton*, 208 Kan. 267, 270, 491 P.2d 954 (1971). "A party's substantive right to recover in a particular action is neither enlarged nor restricted by the provisions of the real party in interest rule and we look . . . to substantive law to see what if any claim for relief plaintiff here has stated in his petition." 208 Kan. at 270. As a result, when considering real party in interest questions, the paramount question is "[w]ho holds the right sought to be enforced?" *Ryder v. Farmland Mutual Insurance*, 248 Kan. 352, 366, 807 P.2d 109 (1991).

In granting Ozark and Guinn's summary judgment motion, the trial court relied on this court's *Patterson* decision to rule that Cathy was not a real party in interest to claim that Guinn violated his fiduciary duty to Alan, which she could sue under as the beneficiary of Alan's term life insurance policy. But as discussed earlier, in making the preceding ruling, it also implicitly ruled that Cathy was not the real party in interest to sue for Guinn's alleged negligent misrepresentation to Alan. On appeal, Cathy contends that the trial court's reliance on *Patterson* was misplaced because unlike the plaintiff in *Patterson*, she has sued on her own behalf as Alan's beneficiary. Ozark and Guinn assert that the trial court properly relied on *Patterson* because it is procedurally similar to Cathy's case.

In *Patterson*, the daughter of the decedent sued a hospice provider for improper care of the decedent during his lifetime. The trial court dismissed the daughter's claims, ruling that she was wrongly suing in her own name on behalf of the decedent. 2019 WL 1213246, at *1. On appeal, this court affirmed the trial court's ruling. It explained:

"The Kansas Supreme Court has long held that claims that survive the death of the decedent may be maintained only by the decedent's personal representative, not his or her heirs. *Cory v. Troth*, 170 Kan. 50, 53, 223 P.2d 1008 (1950). In the present case, however, the amended petition fails to state that [the daughter] is the personal representative of [the decedent]. This is a fatal omission because a personal representative is the real party in interest in such a cause of action. [Citations omitted.]" 2019 WL 1213246, at *5.

As a result, the *Patterson* court affirmed the dismissal of the daughter's lawsuit against the hospice provider because she was suing in her own name—not as a personal representative—for wrongful conduct done to the decedent. 2019 WL 1213246, at *5. Therefore, the *Patterson* decision stands for the proposition that in Kansas, an administrator or executor of a decedent's estate is the only real party in interest to sue for torts committed against the decedent during the decedent's life.

Although Cathy tries to distinguish her case from *Patterson* by arguing that she is suing on her own behalf as Alan's beneficiary, Cathy's argument ignores that under Kansas law, she had no rights as Alan's beneficiary until Alan died. As already discussed, Guinn had no fiduciary duty to Cathy when discussing Alan's life insurance policy options. And our Supreme Court has held that unless the insured names an irrevocable beneficiary, the beneficiary of a life insurance policy has no vested interest in the policy's death benefits until the insured's death. *Tromp*, 143 Kan. at 98. Accordingly, Kansas law supports that Cathy had no interest in Alan's life insurance policy as his beneficiary that allowed her to sue in her own name for Guinn's alleged violation of his fiduciary duty to Alan or his alleged negligent misrepresentations to Alan. In turn, just like the daughter in *Patterson*, Cathy is trying to sue in her own name for alleged wrongdoing that occurred to someone who is now deceased.

To support her contention that she can sue in her own right, Cathy primarily relies on the Iowa Supreme Court case of *Pitts*. There, a husband purchased a life insurance

24

policy that listed both his wife and daughter as beneficiaries. Later, the husband asked his life insurance agent to remove his daughter from the policy, leaving his wife as the sole beneficiary of the policy. When the husband died, his wife discovered that the insurance agent had not removed the daughter from his policy. So, the wife sued the insurance company and the insurance agent for negligence, negligent misrepresentation, and vicarious liability. On appeal after the trial court granted the insurance company and the insurance agent's summary judgment motion, the Iowa Supreme Court held that insurance agents "owe[] a duty to the intended beneficiary of a life insurance policy in limited circumstances." 818 N.W.2d at 106. It went on to hold that in Iowa, a life insurance beneficiary may sue in his or her name after establishing that "he or she was the 'direct, intended, and specifically identifiable beneficiar[y]' of the policy as well as the other elements of negligence." 818 N.W.2d at 106.

The *Pitts* decision favors Cathy's position that beneficiaries may sometimes sue in their own name. But it ignores Kansas' precedent. As acknowledged by the *Patterson* court, our Supreme Court has long held that a cause of action surviving a decedent must be maintained by the decedent's personal representative, not the decedent's heirs. *Patterson*, 2019 WL 1213246, at *5; see *Cory v. Troth*, 170 Kan. 50, 52-53, 223 P.2d 1008 (1950). The *Cory* decision—the decision that the *Patterson* court cited for this proposition—is over 70 years old. 170 Kan. at 52-53. Our Supreme Court's precedent is binding authority. See *Tillman v. Goodpasture*, 56 Kan. App. 2d 65, 77, 424 P.3d 540, 549 (2018) (explaining that this court is duty-bound to follow our Supreme Court's precedent absent some indication that it is moving away from that precedent). Meanwhile, the *Pitts* decision is merely persuasive authority from another jurisdiction. See *Cunningham v. Braum's Ice Cream & Dairy Stores*, 276 Kan. 883, 887, 80 P.3d 35 (2003) (refusing to follow holdings from other jurisdictions as persuasive authority).

Also, Cathy's reliance on *Pitts* ignores that it is factually distinguishable from her case. First, Cathy's case involves whether Guinn gave unsound advice about converting

25

Alan's term life insurance policy into a whole life insurance policy. *Pitts* involved an insurance agent who failed to follow through on the insured's request to make policy changes. The wife could sue for the insurance agent's alleged wrongdoing because the insurance agent had a fiduciary duty to the wife as the intended beneficiary of the husband's policy to follow through on this request. 818 N.W.2d at 106. As previously explained, Guinn had no fiduciary duty to either Alan or Cathy under Alan's term life insurance policy or Kansas law to provide sound advice. Second, Cathy's reliance on *Pitts* ignores that the *Pitts* court never directly addressed whether the wife constituted a real party in interest. The only issue in *Pitts* was whether the insurance agent owed a fiduciary duty to the wife as the husband's intended beneficiary. Thus the *Pitts* decision is not on point with the issue in this case. 818 N.W.2d at 98.

In their briefs, the parties dispute whether the law on standing applies when analyzing real party in interest issues. Cathy argues that she should be able to sue as the beneficiary of Alan's term life insurance policy because she "has a 'sufficient stake' in the outcome of this controversy." Ozark and Guinn argue that the law on standing is irrelevant for purposes of deciding whether Cathy is a real party in interest.

"Standing is a jurisdictional question whereby courts determine whether a plaintiff has alleged a sufficient stake in the outcome of a controversy as to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on the plaintiff's behalf." *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, Syl. ¶ 1, 189 P.3d 494 (2008). It is worth mentioning that although the concepts of standing and real party in interest overlap, they are not the same. See § 1542 Real Party in Interest, Capacity, and Standing Compared, 6A Wright & Miller, Federal Practice and Procedure: Civil 3rd § 1542 (2022) (discussing the differences between the concepts of standing and real party in interest). Still, we need not address the differences between these concepts to resolve Cathy's appeal. Under the plain language of K.S.A. 2020 Supp. 60-217(a)(1) and Kansas

caselaw, Cathy was not the real party in interest to sue Ozark and Guinn for Guinn's alleged violation of his fiduciary duty to Alan and negligent misrepresentation to Alan.

Another argument Cathy makes is that she is the only one "during [her] lifetime" who can assert the claims in her case. For this reason, she argues that she should not have to sue through Alan's estate. For this same reason, she compares her position as a life insurance beneficiary to the position of a wills and trusts beneficiary. She stresses that in *Pizel*, our Supreme Court held that an attorney may be liable for malpractice to the beneficiary of a will or trust that he or she negligently drafted in certain circumstances. Relying on *Pizel,* she argues that she should be able to sue in her own name for Guinn's allegedly tortious conduct towards Alan as Alan's term life insurance beneficiary.

Cathy here introduces a red herring—dragging a secondary subject across the trail to distract attention from the real issue under discussion—into the mix. For example, Cathy's argument ignores a major difference between the will and trust beneficiaries alleging negligence in the context of drafting documents that were supposed to distribute testator's property to them upon the testator's death and life insurance beneficiaries alleging negligence in the context of giving advice to the insured about life insurance. Thus, Cathy's claim is dissimilar to the claim made by the will and trust beneficiaries in *Pizel*.

Additionally, Cathy's reliance on *Pizel* ignores the plain language of K.S.A. 2020 Supp. 60-217(a)(1). Our Legislature has determined that all actions must be prosecuted in the name of the real party in interest. The only exceptions to this rule are listed under K.S.A. 2020 Supp. 60-217(a)(1)(A)-(I). Our Legislature has listed being an executor or administrator as two of those exceptions. K.S.A. 2020 Supp. 60-217(a)(1)(A)-(B). Thus, the combined plain language of K.S.A. 2020 Supp. 60-217(a)(1)(A)-(B) requires the party who has the right sought to be enforced to sue in his or her own name unless that party is the executor or administrator of the estate of the party who has the right sought to

27

be enforced. In such instances, although the executor or administrator is suing for a violation of some right belonging to the decedent, the party may sue in his or her own name because he or she is the executor or administrator of the decedent's estate. Yet, by including this language, our Legislature undoubtedly intended for a party suing on behalf of a decedent to do so as either the executor or administrator of the decedent's estate.

Here, although Cathy argues that she is suing on her own behalf as Alan's term life insurance beneficiary, she challenges Guinn's alleged wrongdoing that influenced Alan to convert his term life insurance policy into a whole life insurance policy. Cathy, as a matter of law, had no vested interest in Alan's term life insurance policy. *Tromp*, 143 Kan. at 98. Therefore, in claiming that she can sue on her own behalf as Alan's term life insurance beneficiary for Guinn's alleged breach of fiduciary duty to Alan and Guinn's alleged negligent misrepresentation to Alan, Cathy has challenged Guinn's alleged violations of *Alan's rights as the insured*. Cathy cannot rely on *Pizel*'s distinguishable caselaw to avoid K.S.A. 2020 Supp. 60-217(a)(1)(A)-(B)'s statutory mandate requiring her to sue as either an executor or administrator of an estate when suing for an alleged wrongdoing that violated the rights of someone who is now deceased.

In her reply brief, Cathy contends that our Supreme Court's *Torkelson* decision supports that she is the real party in interest. In *Torkelson*, our Supreme Court explained:

> "The requirement that an action be brought by the real party in interest has as one of its principal purposes the protection of the defendant from being repeatedly harassed by a multiplicity of suits for the same cause of action so that if a judgment be obtained it is a full, final and conclusive adjudication of the rights in controversy that may be pleaded in bar to any further suit instituted by any other party. [Citation omitted.]" 208 Kan. at 270.

Relying on this language, she argues that she is the real party in interest because if allowed to proceed, her cause would conclude any controversy about Alan's term life insurance death benefits. Nevertheless, Cathy's argument misconstrues *Torkelson*. The

28

*Torkelson* court held that one of the principal purposes of the real party in interest rule was finality. It did not say that the test for whether a party is the real party in interest is whether the cause of action would result in the conclusive adjudication of the controversy. Rather, the *Torkelson* court explained that the test for whether a party constitutes a real party in interest is whether that party is the party who, by substantive law, has the right sought to be enforced. 208 Kan. at 270. As previously explained, under that test, Cathy's status as Alan's term life insurance policy's beneficiary does not make her a real party in interest to sue Ozark and Guinn for Guinn's alleged breach of fiduciary duty to Alan or Guinn's alleged negligent misrepresentation to Alan during his lifetime.

In summary, K.S.A. 2020 Supp. 60-217(a)(1)(A)-(B) and Kansas caselaw support that Cathy was not the real party in interest to sue Ozark and Guinn for Guinn's alleged breach of fiduciary duty to Alan or Guinn's alleged negligent misrepresentation to Alan. Cathy's status as a beneficiary did not make her a real party in interest to sue for those claims. Thus, we affirm the trial court's dismissal of Cathy's claims that Guinn breached his fiduciary duty to Alan and that Guinn negligently misrepresented information to Alan when discussing the conversion of Alan's term life insurance policy into a whole life insurance policy.

For the preceding reasons, we affirm the trial court's summary judgment order.

Affirmed.